## Commonwealth *v.* Safis et al., Appellants.

334

Argued April 14, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Benjamin C. Sigal,* with him *Sylvia Schlesinger* and *Alexander H. Schullman,* for appellants.

*Russell H. Adams,* Assistant District Attorney, with him *Andrew T. Park,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., July 10, 1936:

These three appellants, together with eighteen others, were tried, jointly, on indictments charging inciting to riot and riot. The appellants were found guilty on both indictments.

Carolyn Hart was sentenced on the indictment charging riot to pay a fine of 6½c, costs of prosecution, and to undergo imprisonment in the State Industrial Home for Women in Muncy, Pa., and sentence was suspended on the indictment charging inciting to riot. Gus Safis was sentenced on each indictment to pay a fine of $1, costs of prosecution, and to undergo imprisonment of three months in the Allegheny County Workhouse. George Alexander was sentenced on each indictment to pay a fine of $1, costs of prosecution, and to stand committed to the Pennsylvania Training School at Morganza, Pa. The Safis and Alexander sentences were to run concurrently.

Separate appeals were taken, argued together, and will be disposed of in one opinion.

Sometime prior to September 1, 1934, a committee representing the Young Communistic League called upon Mayor Lysle of the city of McKeesport and requested permission to hold a meeting at the corner of 5th and Locust streets, which is the center of the business district. The request was refused, but permission was given to hold a meeting at another location. Notwithstanding this refusal, Carolyn Hart, George Alexander, and others decided to hold the meeting at the place they had requested. Notice of the proposed meeting was given by advertisements in the paper and

by handbills which Carolyn Hart helped to prepare and distribute throughout the city. A red flag was raised on the day of the meeting on a pole in the tenth ward. There was no proof, however, as to the parties who put up the flag. Before the meeting, a truckload of men drove around the town, singing songs in a foreign language, interspersed at times with statements in English of "Come on, fellow-workers of the Communistic Union," etc. A detail of twenty-two police was sent to the designated place of the advertised meeting about 7:30 P. M., with directions to prevent anyone from speaking, and to maintain order. Upon arriving there, they found a crowd estimated at from four to ten thousand people. At about 8 P. M., George Alexander emerged from the crowd, chained and locked himself to a pole and began to speak, making such remarks as, "Down with the American Government and up with the Soviet Union" and "Down with the American flag." Very shortly thereafter, Carolyn Hart bound herself in the same manner on the other side of the street and likewise indulged in inflammatory language. When the speakers were placed under arrest, they vigorously resisted and appealed to their "fellow-workers" for help and not to let the police take them to jail. Others in the crowd shouted "kick him," "hit him," "down with Mayor Lysle and his Cossacks," and other words of similar import. Mary Alexander, the mother of George Alexander, and Gus Safis attacked the police who attempted to arrest George. The crowd became more boisterous and unruly. As one witness said, the "people acted like mad, shoving in all directions." As a result, women and children became panic-stricken, several of the former fainted. It is evident that there was great danger of this large assembly's getting entirely beyond the control of the police. To restore order and disperse the multitude, it was necessary for the police to use tear gas bombs. In the meantime,

threats were made that the police station would be stormed to release the prisoners. A message to that effect was sent to the officer in charge, and, as about a thousand people were milling around at that point, a fire hose was thrown about the building for protection.

The appellants in their twenty-five assignments of error complain, inter alia, of the trial judge's examining defendants and their witnesses, of his expressing opinions that manifested a disbelief in their testimony, and that he had such a general antagonistic attitude toward them that they were deprived of a fair and impartial trial.

The trial lasted four days; heated discussions were had between the attorneys, and the defendants and some of their witnesses, if not defiant, were at least evasive and unresponsive. The trial judge, by the questions he asked and in his effort to have them answered, endeavored, in the interest of justice, to elicit the truth. Reference is particularly made to the alleged improper inquiries by the judge and of his unfair attitude when Al Martin, secretary of the league and who helped to arrange for the meeting, was on the stand. Martin's attention was called to the handbills that had been distributed, which contained the words, "Forward to Soviet America," and other similar slogans. The court, having in mind, no doubt, that it had been testified that one of the objects of the meeting was to arouse interest against war, asked this witness if he knew that the Soviet Government has a large standing army. He made an evasive reply and the judge insisted upon a responsive answer, which he did not succeed in obtaining. He might very well have refrained from that sort of inquiry as the extent of the witness' knowledge on that question threw no important light on the issues involved.

We recognize that it is the duty of a judge, both in civil and criminal trials, to preside with entire impar-

tiality and not take a too active part in developing testimony or enter into discussions with witnesses. "Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires ...... The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved": Com. v. Myma, 278 Pa. 505, 508, 123 A. 486. See, also, Sarshik v. Fink, 292 Pa. 256, 141 A. 39; Fischer v. Commercial Nat. Bank, 321 Pa. 200, 184 A. 57; Com. v. McCord, 116 Pa. Superior Ct. 480, 486, 176 A. 834.

We have considered, not only the incident to which we have just referred, but also the other charges, which it is unnecessary to detail, embracing the judge's hostile manner toward the appellants and his unwarranted activity in asking questions of witnesses, some of whom we might add, parenthetically, were manifestly perverse; but we are not convinced that he was guilty of conduct that merits censure at our hands.

The court is criticized, too, for requiring some of the defendants (other than the appellants) to stand when they were identified by a witness. Such action was found necessary as the defendants' counsel refused to state the name of any particular defendant. This did not violate the constitutional right of any defendant by compelling him to give evidence against himself. At any rate, the appellants' rights were not affected as their identity was not in doubt, as they took the stand and testified in their own behalf.

Fault is also found in the cross-examination of Mr. Rack, who had been attorney for defendants during the early stages of the case but withdrew as their counsel. He had testified, in chief, to the effect that the riot on the evening of September 1st was entirely due to the conduct of the police officers and their treatment of the defendants. He was asked if he had not told the mayor that he had withdrawn from the case because he felt that the defendants were guilty, to which he

replied: "Not the defendants as a whole, no. Q. How many of them did you mention? A. I didn't mention any defendants. Q. What ones do you now mean that were guilty?" When objection was made "to any further questions along this line," the court stated, in overruling the objection: "In view of his testimony it would be proper to ask this question, whether he made that statement." The witness then volunteered the following statement: "None of them are guilty of riot or inciting to riot. The only offense any of them might be guilty of is the speakers might be guilty of violating a city ordinance for speaking without a permit." It will be observed that the court did not say that the witness could give his opinion of the guilt or innocence of the defendants, but directed that his answer be confined to whether or not he had formerly said that they were guilty. If so, it would have been inconsistent with his testimony. We think the court was correct in ruling that the testimony was admissible, not as an expression of opinion, but as affecting the credibility of the witness.

Complaint is made to the asking of George Alexander how long he had been in this country. In Com. v. Kahn, 116 Pa. Superior Ct. 28, 32, 176 A. 242, we said that interrogating witnesses as to where they were born, whether citizens of this country, and questions of that character are not intrinsically improper, as those are matters largely under the control of the trial judge. We held in Greenwood v. Union Tract. Co., 30 Pa. Superior Ct. 488, that it was not error to ask plaintiff, on cross-examination, if he was a naturalized citizen. We see nothing wrong in that inquiry.

The appellants argue, also, that the charge was inadequate in that the trial judge magnified the importance of the proof upon the part of the Commonwealth and slighted the evidence offered by appellants. A reference to the charge will disclose that the defend-

ants' legal rights were fully guarded. The judge gave a comprehensive and impartial review of the defendants' testimony, clearly and correctly stated the law applicable to the case, and fairly presented the respective contentions of the parties. The appellants were entitled to nothing more: Com. v. Kaiser, 184 Pa. 493, 499; Lippincott et al. v. Warren Apt. Co., 312 Pa. 480, 482, 167 A. 590. Counsel for the defense evidently was not impressed at the trial that the judge failed to refer adequately to the testimony offered by appellants, or that the legal principles involved were incorrectly stated, as no exceptions were taken to the answers to the thirty-five points submitted by the defendants and no further instructions were requested. But one specific exception was taken to the court's charge and that was to the statement that each of the defendants (other than the appellants) had been identified by name.

Finally, exception is taken to the suspended sentence imposed upon Carolyn Hart on the indictment charging her with inciting to riot. It is contended that there is no proof of two separate crimes, that the alleged offenses are so clearly interwoven that there is no line of demarcation between them, that, therefore sentence should not have been imposed on each indictment: Com. v. Trunk, 311 Pa. 555, 167 A. 333.

We cannot accept the argument that both convictions are based on the same offense, as in Com. ex rel. v. Veley, 63 Pa. Superior Ct. 489, and Com. v. McCord, supra (116 Pa. Superior Ct. 480). Inciting to riot is not a constituent element of riot; they are separate and distinct offenses: Com. v. Merrick, 65 Pa. Superior Ct. 482; Com. v. Egan, 113 Pa. Superior Ct. 375, 173 A. 764. One may incite a riot and not be present or participate in it, or one may be present at a riot and by giving support to riotous acts be guilty of riot, yet not be guilty of inciting to riot. The testimony shows

that four days before the riot, Carolyn Hart came from Pittsburgh, where she resided, to McKeesport, and took an active part in preparing for the meeting this Saturday night, after it had been prohibited by the proper constituted authorities of the city of McKeesport. As we have already pointed out, she helped to compose the articles in the newspapers and the statements in the handbills and aided in the circulation of the latter to secure an attendance at this meeting. She procured the chain and lock with which she could bind herself firmly to a pole, thus better to resist the police officers, who she undoubtedly knew would attempt to arrest her. Her conduct prior to the riot reasonably tended to incite it, and indicates that she anticipated the results that followed. George Alexander's conduct clearly shows that he was a party to the preconceived plan, and he must have known that what he did and said would provoke a serious disturbance of the peace. The proof of inciting a riot is not quite as strong against Safis. We think, however, it was sufficient for a jury to conclude that he was in the crowd, encouraging others to interfere with the police and engaging in such actions as would naturally result in a riot. We are all of the opinion that the evidence was sufficient to convict these defendants of both offenses with which they are charged.

All the assignments of error have been considered and are overruled.

The judgment in each appeal is affirmed, and it is ordered that the appellants severally appear in the court below at such time as they may there be called and that they be by that court committed until they have complied with their respective sentences or any part of them which had not been performed at the time each appeal was made a supersedeas.