## Commonwealth *v.* Albert, Appellant.

Argued March 12, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*William S. Doty,* for appellant.

*William F. Cercone,* Assistant District Attorney, with him *William S. Rahauser,* District Attorney, for appellee.

OPINION BY RHODES, P. J., July 19, 1951:

Defendant, Nathan Albert, has appealed from a conviction and sentence on a bill of indictment charging inciting to riot.

Appellant contends that the evidence presented by the Commonwealth was not sufficient to sustain the verdict. The basis of the trouble out of which the prosecution arose was alleged racial discrimination in the use of the public swimming pool maintained by the City of Pittsburgh at Highland Park. Mixed groups on at least three Sundays prior to August 22, 1948,

had used the pool under police protection. On August 22d, one hundred sixty policemen were assigned to this area due to mounting tension and the likelihood of serious disturbance. On that day a mixed group came by trolley and was given police protection to the pool, a distance of about a quarter of a mile. A group which was opposed to such use of the swimming pool had collected in the vicinity; they were held back by the police. It was estimated that the number reached many hundreds by the middle of the afternoon.

Appellant arrived about 1:30 on the afternoon of August 22d and conferred with the so-called "Progressive" group which was opposed to racial discrimination in the use of the pool. Minor disorders occurred from time to time, and there was hostility manifested between the respective factions. Police Lieutenant Baker who was in charge of the police, 120 of whom were in uniform and 40 in plain clothes, testified that appellant said to him, "I hear you are going to have trouble here today," and that he replied, "If we are going to have trouble, we will be able to take care of it." The opposition group had collected on the opposite side of Stanton Avenue from the pool. On at least three different occasions prior to 3:30 that afternoon, appellant signaled with his hands, then ran and was followed by a crowd apparently of the so-called "Progressive" group, who wore "Progressive Party" buttons. Appellant led this group toward those who had gathered on the opposite side of Stanton Avenue, as well as up and down the passageway leading from Stanton Avenue to the pool entrance. The police would break up the crowd and thus avert a conflict between the two contending factions. On the last occasion, when appellant was arrested, the police interceded and broke up the skirmish which followed, and prevented those on the opposite side of Stanton Avenue and the followers of appellant from coming together and engaging

in a serious altercation or riot which would have inevitably ensued. On that occasion Police Officer Walsh was badly injured, and Police Lieutenant Baker was beaten and bruised. About one-half hour prior to appellant's arrest, Police Officer Robinson was also injured. Following appellant's arrest the disturbances ended. Appellant had been at the pool previously and was known to some of the police.

Taking the stand in his own behalf, appellant admitted circulating among the "Progressive" group. He denied that he had made any signals or that he ran or that he was knowingly followed by any person or group. He explained that he was there as an observer to see that the rights of all citizens were protected. He denied any intention to cause trouble. There was testimony to support his own version of his conduct. Appellant did not recall being present at a meeting of the "Progressive" group on Wood Street, Pittsburgh, where racial discrimination was discussed and where he agreed to escort colored people to the pool on the Sunday afternoon in question. He admitted his presence at various meetings where racial discrimination was discussed. In rebuttal a Commonwealth witness, Matthew Cvetic, who had been present at the previous meeting of the pro-negro group on Wood Street, testified that appellant was present at the Wood Street meeting, and was directed and specifically agreed to personally escort Negroes to the pool on Sunday afternoon, August 22d.

The Commonwealth's evidence, if believed, was sufficient to sustain a conviction. " 'Inciting to riot, from the very sense of the language used, means such a course of conduct, by the use of words, signs or language, or any other means by which one can be urged on to action, as would naturally lead, or urge other men to engage in or enter upon conduct which, if completed, would make a riot. If any man or set of

men should combine and arrange to so agitate the community to such a pitch, that the natural, and to be expected results of such agitation, would be a riot, that, would be inciting to riot, . . .' ": *Com. v. Merrick*, 65 Pa. Superior Ct. 482, 491. See *Com. v. Spartaco*, 104 Pa. Superior Ct. 1, 7, 158 A. 623; *Com. v. Egan*, 113 Pa. Superior Ct. 375, 380, 173 A. 764; *Com v. Safis*, 122 Pa. Superior Ct. 333, 340, 186 A. 177; *Com. v. Apriceno*, 131 Pa. Superior Ct. 158, 198 A. 515.

The trial judge in a complete charge submitted to the jury the question whether appellant's conduct tended to precipitate a riot. Certainly appellant's actions tended "to provoke a breach of the peace." *Com. v. Merrick*, supra, 65 Pa. Superior Ct. 482, 489. We think the jury was justified in concluding that the natural and probable result of appellant's actions would be an outbreak of violence or a riot. The reason for the presence of 160 policemen at the swimming pool was apparent to everyone there, and appellant was aware of the danger inherent in the situation, as indicated by his remarks to Police Lieutenant Baker. The jury could find that appellant, fully cognizant of the hostile attitude of the respective groups and of the possibilities of conflict between them, with or without a prearranged plan, signaled members of the pronegro group to action with the intention of provoking violence or in utter disregard of the probable result of his own actions. Signs, actions, and movements are just as effective in inciting to riot as the use of words or inflammatory language. The only reasonable inference from the Commonwealth's evidence is that appellant's acts were committed with the intent to provoke a riot by bringing the opposing groups into violent conflict or with reckless and willful disregard of their probable outcome in that respect. *Com. v. Spartaco*, supra, 104 Pa. Superior Ct. 1, 5, 158 A. 623; *Com. v. Egan*, supra, 113 Pa. Superior Ct. 375, 381;

173 A. 764. Only police interference prevented a riotous conflict, and that was not accomplished without some physical violence. Of course, if appellant's testimony were accepted, he committed no unlawful acts and was only exercising his legal rights as an observer for a cause; and as an innocent bystander he would not be responsible for the acts of those over whom he had no control. The only question before us, however, is the sufficiency of the Commonwealth's evidence to sustain the conviction for inciting to riot; the credibility of the witnesses was exclusively for the jury. In support of his version, appellant cites *Terminiello v. Chicago,* 337 U. S. 1, 69 S. Ct. 894, 93 L. Ed. 1131, which deals with a limited aspect of the constitutional guarantee of freedom of speech. It has no application to the present appeal. Other cases cited by appellant relating to the constitutional right to freedom of assembly are likewise not applicable. Appellant was guilty of committing the offense of inciting to riot, or he committed no offense whatsoever. The nature of the verdict depended upon whether the jury believed the evidence of the Commonwealth or that of appellant.

The Commonwealth introduced in evidence a conviction of appellant wherein it appeared that he had entered a plea of nolo contendere to an indictment charging him with having obtained voters' signatures to a primary nomination petition by false representations as to the nature of the petition. Appellant attacks this record on several grounds. For purposes of impeaching appellant's credibility a conviction had upon a plea of nolo contendere has the same force and effect as a conviction on a plea of guilty, or a jury verdict following a plea of not guilty; and when judgment has been entered on the plea of nolo contendere the record is competent evidence of the fact of conviction. *Buck v. Commonwealth,* 107 Pa. 486; *Com ex rel. District Attorney v. Jackson,* 248 Pa. 530, 535, 94 A. 233;

*Com. v. Ferguson,* 44 Pa. Superior Ct. 626, 628; *Com. ex rel. Monaghan v. Burke,* 167 Pa. Superior Ct. 417, 420, 74 A. 2d 802; Annotation, 146 A. L. R. 867. There is no doubt but that the offense of which appellant was convicted was in the nature of crimen falsi, within the definition set forth in *Com. v. Gold,* 155 Pa. Superior Ct. 364, 371, 38 A. 2d 486. See *Com v. Gibbs,* 167 Pa. Superior Ct. 79, 86, 74 A. 2d 750. Appellant's principal contention in this respect is that the indictment charging him with obtaining signatures to a nomination petition by false and fraudulent representations, and to which he entered the plea of nolo contendere, did not in fact charge a crime. Appellant, by entering a plea without raising any objections, waived any defects in the form of the indictment. *Com. v. Lingle,* 120 Pa. Superior Ct. 434, 436, 182 A. 802; *Com. ex rel. Jenkins v. Ashe,* 341 Pa. 334, 336, 19 A. 2d 472; *Com. ex rel. Wolcott v. Smith,* 151 Pa. Superior Ct. 78, 80, 29 A. 2d 367. On the other hand, a defect which is one of substance, and not of form, is not cured by a plea of guilty, and, where the facts charged in an indictment do not constitute a crime, the defect in the indictment is not cured by a plea of nolo contendere. *Com. v. Smith (No. 2),* 116 Pa. Superior Ct. 146, 177 A. 73; *Com. v. Bienkowski,* 137 Pa. Superior Ct. 474, 477, 9 A. 2d 169. Appellant did not question the validity of the indictment charging the obtaining of signatures to a nomination petition by false representations in that proceeding, that is, by direct attack or on appeal. But he now makes a collateral attack upon the previous judgment of conviction for the purpose of questioning its use as impeaching evidence. Assuming, however, that such collateral attack is possible, the indictment, charging the obtaining of signatures to a nomination petition by false representations, charged a crime indictable at common law, if not under the statute. *Com. v. Slome,* 147 Pa.

Superior Ct. 449, 24 A. 2d 88; *Com. v. Antico,* 146 Pa. Superior Ct. 293, 22 A. 2d 204.

Appellant objects to the admission of the testimony of Matthew Cvetic who was called by the Commonwealth in rebuttal. Cvetic testified that he was present at the Wood Street meeting of the "Progressive" group where the appellant was instructed and agreed to bring Negroes to the Highland Park pool. Appellant argues that such testimony by Cvetic was not admissible as rebuttal evidence in that it was an attempt to impeach a witness on an immaterial matter. Appellant testified that he was present at the pool only as an observer. Thus he took the position that he was not there under any prearranged plan with the "Progressive" group. This was in direct contradiction to the contention of the Commonwealth that as to his signals to the "Progressive" group there had been previous agreement, and that the sorties had been planned. The rebuttal testimony of the Commonwealth's witness contradicted appellant on a matter germane to the issue in the case, and it was proper. *Com. v. Petrillo,* 341 Pa. 209, 223-226, 19 A. 2d 288; *Herr v. Erb,* 163 Pa. Superior Ct. 430, 434, 62 A. 2d 75; Henry, Pennsylvania Trial Evidence, §470, p. 732, 3d Ed.

Appellant's further complaint that the newspaper publicity during the trial prevented a fair trial is not founded on anything appearing in the record.[1] No motion was made during the trial to withdraw a juror and continue the case by reason of any publicity. Moreover, specific instructions were given to the jury by the trial judge not to discuss or permit discussion of the case in their presence.

The case was submitted to the jury in a comprehensive charge wherein the trial judge defined the offense for which appellant had been indicted, as well as

---

[1] See *Com. v. Schurtz,* 337 Pa. 405, 409, 410, 10 A. 2d 378.

the issues involved. To the charge of the court no complaint has been made on appeal.

Nothing else in appellant's exhaustive brief warrants comment.

As appellant has not shown any reversible error which would justify the granting of a new trial in this case, the conviction will be sustained.

Judgment and sentence of the court below are affirmed.