## Commonwealth v. Truitt, Appellant.

Argued April 16, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (GUNTHER, J., absent).

*Joseph Bonidy,* with him *Earl R. Jackson,* for appellants.

*Joseph M. Loughran,* Assistant District Attorney, with him *L. Alexander Sculco,* District Attorney, for appellee.

OPINION BY RHODES, P. J., July 19, 1951:

Harry W. Truitt, Jr., John F. Allen, Lester Peay, and Charles B. Tarpley were indicted at No. 194, August Term, 1950, in the Court of Quarter Sessions of Westmoreland County, having been charged with (1) obstructing an officer in attempting to make an arrest, and (2) assaulting and beating an officer. On this bill of indictment the jury found all of the defendants guilty, and each, except Tarpley whose sentence was deferred because of illness, was sentenced to one year in the Allegheny County Workhouse. At No. 215, May Term, 1950, in the Court of Quarter Sessions of Westmoreland County, the same four defendants were charged with (1) assault and battery, and (2) aggravated assault and battery upon the person of John Bordonaro, who was Captain of Police in the City of New Kensington, Westmoreland County. They were found guilty by the jury as indicted, and each, except Tarpley, was sentenced to the Allegheny County Workhouse for three years. At No. 216, May Term, 1950, in the Court of Quarter Sessions of Westmoreland County, Robert T. Smith and Charles Tarpley were indicted for affray; they were found guilty by the jury's verdict; and Smith alone was sentenced on this conviction

for a term of not less than one and one-half years and not more than three years in the Western State Penitentiary.

The present appeals to this Court are by Truitt, Allen, Peay, and Smith. The cases grew out of the same factual situation, and the charges were tried before the same jury. The appeals will be disposed of in one opinion.

Appellants do not question the sufficiency of the evidence to sustain the verdicts. Their points relate to the refusal of a new trial, and the questions presented are based on (1) the admission of allegedly prejudicial evidence concerning communistic connections and activities of Truitt and Smith; (2) the failure of the trial judge to charge on Truitt's constitutional right of immunity from search and seizure by an officer attempting to make an arrest without a warrant in Truitt's home; (3) the refusal of the motion of counsel for appellants to withdraw a juror when it was shown during the trial that a woman juror had been driven home the preceding day by the alderman before whom the preliminary hearing was held.

A review of the evidence produced at the trial is essential to an understanding of the issues. The Ellay Company of New York City, a wholesale clothing concern, had a number of retail outlets or stores under the name of Eagle Clothing Company, a separate corporation. An Eagle Clothing Company store was located in New Kensington, Westmoreland County. Employes of Ellay Company in New York, represented by Local 65 of the Wholesale and Warehouse Workers Union, had been on strike for some time prior to March 18, 1950. To more effectively conduct the strike, Local 65 in New York City hired persons to picket the various retail outlets of Ellay Company. Smith, although not a member of Local 65, was sent from New York City to New Kensington, where he, as the leader, hired Peay and

330

Tarpley from Pittsburgh, together with other male and female pickets. The pickets were maintained by Local 65 at a Pittsburgh hotel and transported daily to New Kensington to walk back and forth in front of the Eagle Clothing Company store. Picketing had been in progress for many days prior to March 18, 1950. The pickets were not employes of the Eagle Clothing Company store in New Kensington or of Ellay Company in New York; they were not members of, but merely hired by, Local 65. There was no labor trouble or strike in the New Kensington store, and the employes were not members of or affiliated with Local 65.

Truitt operated a dental technician's office on the second floor of 937 Fourth Avenue, New Kensington, and resided with his wife and family in an apartment on the third floor. An official of Local 65 in New York City had directed Smith to contact Truitt in New Kensington. The pickets, including all the defendants, used Truitt's office and apartment for their personal convenience.

About 8:30 p.m. on March 18, 1950, a customer of the Eagle Clothing Company, one John Fee, was attacked and beaten by Smith and other pickets as he was leaving the store after having made a purchase. It was testified that Allen, Peay, and Tarpley were involved. Fee's friends came to his rescue, and a general fight and disturbance ensued with many people engaged. The prosecutor, Captain Bordonaro, who had been called to the scene of the disturbance, saw Smith break away from the group and run. Bordonaro went after Smith who ran into the rear entrance of the building in which Truitt's office and apartment were located. Bordonaro returned to the scene to procure the assistance of another officer. Thereafter he went up the front stairs to Truitt's office on the second floor of the building while the other officer watched the rear entrance. Bordonaro met Truitt, Allen, and Peay coming down the

steps. . He demanded that Truitt surrender Smith but was told by Truitt that there was no one there. ' Bordonaro went to Truitt's apartment on the third floor in his search for Smith. As he came down Bordonaro met Truitt, Allen, and Peay on the second floor landing. Bordonaro again demanded that Truitt surrender Smith. According to Bordonaro, Truitt replied: "Get out of here. You ain't got no business in here. You ain't getting any fellow." Truitt, Allen, Peay, and Tarpley attacked the officer. Someone hit him in the back as he attempted to use the telephone. Truitt took hold of Bordonaro and forcibly removed the telephone. from his hands. In doing so, Bordonaro's arm hit the door and his wrist was severely injured. Truitt thereupon said to Bordonaro: "Don't make me laugh; you're not taking that fellow out of here anyhow." Peay grabbed Bordonaro and ripped his coat. Bordonaro then informed Truitt, Allen, and Peay that they were under arrest; he succeeded in getting Allen and Peay downstairs where they were turned over to other police. Truitt returned to his apartment. He was later arrested by other officers.

Truitt taking the stand in his own behalf testified that the pickets were in his quarters to warm themselves, to rest, and to use the toilet facilities; that his only connection with the pickets was a natural and humane desire to assist them and to help labor. Truitt said he was attempting to call his attorney when Captain Bordonaro took the telephone from him, and that an altercation between them ensued. According to Truitt, Bordonaro then grabbed Peay and in the course of the tussle Bordonaro's coat was torn. Truitt also said that he did not know that Smith was in the washroom of his office when Captain Bordonaro sought Smith; that he discovered this fact later. Truitt made a general denial of the charges brought against him by Captain Bordonaro.

Smith also took the stand in his own behalf, as did the other appellants. He admitted that he had been hired by officials of Local 65 in New York to conduct the picketing operations in New Kensington, although he was not a member of Local 65 and had never worked for the Ellay Company. He said he belonged to the Maritime Union, C.I.O. Smith testified that he was acting as captain of pickets in front of the Eagle Clothing store when Fee and another party, Donald Fostina, came out of the store, attacked him and beat him up. He said he finally broke loose and ran into Truitt's office to wash the blood from his face. Smith denied any improper acts.

Appellants Truitt and Smith claim that, when the district attorney cross-examined them as to their alleged communistic activities and introduced rebuttal testimony to show alleged communist connections, the introduction of such evidence was irrelevant, incompetent, and so prejudicial and inflammatory as to deprive them of their constitutional right to a fair trial.

On cross-examination by the district attorney, Truitt explained his interest in the pickets by stating: "I have always been or tried to be friendly toward labor." He explained that an organizer for Local 65 in New York City had come to him in New Kensington and asked him to assist the pickets because of his reputation for trying to help labor. In response to questioning by the district attorney, Truitt admitted being State Committeeman for the Progressive Party. The district attorney then asked Truitt whether the Progressive Party was communistic. No objection was made to this question by appellants' trial counsel, and Truitt answered that the Progressive Party was not communistic so far as he knew. The district attorney continued the cross-examination of Truitt, as follows: "Q. . . . Did you have any connection with the communist party? A. I have not. Q. Do you ever attend communist meetings? A. Not communist meetings. I have at-

tended meetings open to the public, whether they have or there have been communists there, I suppose there were. I am sure there were Democrats there. Q. Do you have any affiliation with the communist party? A. None whatever. Q. Isn't it or that the way you make your living? A. It is not." Again counsel for appellants made no objection whatsoever. to this cross-examination. The district attorney continued the cross-examination of Truitt as to his acquaintance and relations with the officials of Local 65 in New York City. Truitt was then asked the following questions without objection being interposed by counsel: "Q. Do you know Arthur Ozmann, President of this Local 65, was cited by the House Committee on Education, the Congress of the United States, for communist activities? A. I had no way of knowing. Q. You didn't know that? A. No. Q. Didn't Arthur Ozmann tell you he was the Arthur Ozmann who was cited by the Congressman? A. I met Mr. Ozmann, said hello and good-bye." At this point counsel made an admittedly belated objection to the questioning concerning communism.

Smith was also cross-examined as to the alleged communistic affiliations of Local 65 to which counsel made no objection. Appellants' counsel did not object when Smith was asked whether he was a member of the Communist Party. After extended cross-examination of Smith as to Local 65, counsel did make an indefinite objection to "the stuff that Mr. Loughran is trying to inject into this case," which objection was overruled.

Under the circumstances of this case, we do not think appellants have shown reversible error in the cross-examination of appellants. The evidence brought out on cross-examination was received without objection. There was ample opportunity for counsel to object when Truitt and Smith were questioned at length regarding the alleged communistic affiliations of Local 65, as well as concerning their own alleged connection with the Communist Party. "The initiative in exclud-

ing improper evidence is left entirely to the opponent,—so far at least as concerns his right to appeal on that ground to another tribunal. . . . A rule of Evidence not invoked is waived." 1 Wigmore, Evidence, § 18, p. 321, note 1, 3d Ed. Thus, in *Poluski v. Glen Alden Coal Co.*, 286 Pa. 473, 476, 133 A. 819, 820, Mr. Justice KEPHART, after quoting the above rule from Wigmore, adopted the following from *Sawyer v. French,* 290 Mo. 374, 385, 235 S.W. 126, 130: "Inadmissible evidence, including hearsay evidence, admitted without objection, is not a nullity or void of probative force, but is to be given its natural probative effect as if it was in law admissible. [10 R.C.L. secs. 197 and 198, p. 1008.] This is true even in a criminal case." And further, as stated in 1 Wigmore, Evidence, §18, p. 323, 3d Ed.: "For evidence contained in a specific question, the objection must ordinarily be made as soon as the question is stated, and before the answer is given; unless the inadmissibility was due, not to the subject of the question, but to some feature of the answer.'' The belated objection of counsel for appellants in this case was in effect no objection. This Court said in *Com. v. Woloszchuk,* 133 Pa. Superior Ct. 470, 473, 3 A. 2d 10, 12: "If an objection is not entered promptly, the proper practice is to move at once, and before the witness leaves the stand, to strike out the testimony, and, if the court refuses to do so, take an exception: Commonwealth v. Hay, 80 Pa. Superior Ct. 503, 506; Commonwealth v. Brown, 264 Pa. 85, 107 A. 676. In failing to enter a timely objection, the defendants may be deemed to have been satisfied to have the questions asked. A reversal will not be granted where the record indicates an acquiescence by a defendant in the alleged erroneous introduction of evidence: Commonwealth v. Emery, 273 Pa. 517, 117 A. 338. 'When irrelevant or incompetent testimony is elicited by questions which are not objected to at the time they are put, and the trial is permitted to proceed with this testimony upon the record, a refusal of a request to

strike it out, made after the witness has left the stand, will not be reviewed; in such case the only course is to ask that the jury be instructed to disregard the testimony, and a refusal of this request can be assigned for error': Forster v. Rogers Bros., 247 Pa. 54, 63, 93 A. 26. See, also, Bickel v. Reed, 118 Pa. Superior Ct. 335, 179 A. 762; Commonwealth v. Winegrad, 119 Pa. Superior Ct. 78, 180 A. 160." Furthermore, counsel for appellants made no motion to strike out any testimony or remove it from the consideration of the jury; and no request was made that the trial judge make any reference thereto in his charge. In fact, appellants made no request for charge, and they did not take any exception to the charge of the court whatsoever.

Trial counsel was satisfied to have appellants interrogated relative to their alleged communistic connections and activities and their relation with Local 65.[1] Nevertheless, present counsel for appellants claims that this was fundamental error. Although present counsel may have tried the case differently, this does not warrant a reversal or serve as a reason for a new trial. A defendant is free to choose his counsel, and counsel must be left free to try the case as he thinks best. When a defendant is represented by competent counsel of his own choice, it ought to be an exceedingly rare case where an appellate court would declare it fundamental error for the trial court to receive evidence which was introduced without objection. On this occasion appellants' counsel deliberately chose to try the case as he did, and he and his clients must abide by the result. Trial strategy and the conduct of the defense are matters which must be left largely to

---

[1] At the argument before this Court, junior trial counsel for appellants stated to this Court that during the trial he had asked the senior trial counsel to object to the cross-examination relative to such communistic connections and activities on the part of appellants, and that the senior trial counsel said he would not object and that he wanted such testimony to go into the record.

the judgment of trial counsel. *United States ex rel. Darcy v. Handy,* D.C.M.D. Pa., 97 F. Supp. 930; *Com. ex rel. Darcy v. Claudy,* 367 Pa. 130, 133, 79 A. 2d 785.

The trial judge limited the district attorney in his cross-examination of appellants, and cautioned the jury that appellants were not being tried on the issue of communism, and that they should not allow any prejudice against communism or against the Communist Party to influence their decision in the case. The method and extent of cross-examination must be left largely to the discretion of the trial judge, and unless this discretion is plainly abused to the injury of the party complaining this Court will not reverse. *Com. v. Katz,* 138 Pa. Superior Ct. 50, 64, 10 A. 2d 49; *Com. v. Craven,* 138 Pa. Superior Ct, 436, 445, 11 A. 2d 191; *Com. v. Farley,* 168 Pa. Superior Ct. 204, 213, 77 A. 2d 881.

By way of rebuttal, the Commonwealth called Matthew Cvetic, who had joined the Communist Party to obtain information for the Federal Bureau of Investigation. Over the objection of counsel for appellants, this witness testified that he attended communist meetings in Western Pennsylvania at which Truitt was present and participated in the discussion. This testimony of Cvetic was offered by the Commonwealth in rebuttal to attack the credibility of Truitt. Truitt was recalled to the stand to rebut the testimony of Cvetic. Truitt denied attending communist meetings as such, stating he did attend "Meetings open to the public," although "There were communists there." Truitt testified Cvetic asked him to join the Communist Party, but he refused.

Appellants elected to try their case with the communist issue injected into it, and we cannot say they did not have a purpose in doing so. Evidence introduced by the Commonwealth, without objection, established that Local 65, which conducted the picketing at the New Kensington store, was communist dominated and had been thrown out of the C.I.O. for that reason. The

cross-examination of Truitt and Smith as to the character of Local 65 and their connection with it was proper. Likewise, without objection, Truitt and Smith were cross-examined as to whether they were Communists or had any affiliations with the party. Smith had been hired by Local 65 as the picket captain; he brought the pickets to New Kensington on behalf of that organization, and he met Truitt the same day. Truitt knew the officers of Local 65, and was contacted by its organizer from New York relative to the picketing. Appellants met this subsidiary issue and presented testimony in contradiction of the testimony of Commonwealth's rebuttal witness Cvetic. It was relevant for the Commonwealth to disclose fully the circumstances surrounding the commission of the crimes with which appellants were charged and on trial. It was permissible for the Commonwealth to show Truitt's relations with Smith and the pickets generally and with Local 65. This evidence had a bearing on whether Truitt harbored Smith at the time Smith was sought by the police, and as to whether Truitt did commit the offenses of resisting arrest and assaulting an officer. The testimony as to the communistic character of Local 65 and the communistic connections and activities of appellants relates to an issue in which the appellants had tacitly acquiesced. The evidence as to communism was in the case for all purposes for which it was relevant, and this applies to Cvetic's testimony introduced by the Commonwealth in rebuttal. See *Commonwealth v. Albert,* 169 Pa. Superior Ct. 318, 82 A. 2d 695. The evidence relating to appellants' alleged communistic connections was certainly admissible also to show appellants' motive in committing the offenses with which they were charged. Cf. *Com. v. Campolla,* 28 Pa. Superior Ct. 379; *Hester v. Com.,* 85 Pa. 139, 156. Proof of motive in the commission of crimes is not always necessary, but such proof is always relevant. *Com. v. De Petro,* 350 Pa. 567, 572, 39 A. 2d 838. It is there-

fore not necessary to consider whether the evidence relating to communism was properly limited by the trial judge to its effect solely as impeaching evidence within the rule set forth in *Herr v. Erb*, 163 Pa. Superior Ct. 430, 433, 435, 62 A. 2d 75, and *Com. v. Blose*, 160 Pa. Superior Ct. 165, 50 A. 2d 742.

Appellants claim it was fundamental error for the trial judge to have failed to charge the jury that Truitt had a constitutional guarantee against the search of his home by the officer attempting to make an arrest without a warrant under the circumstances here present. Trial counsel for appellants made no objection to the charge and did not request instructions on any point. In the absence of any exceptions to the charge or request for additional instructions, a defendant is not entitled to a new trial unless the charge contained basic or fundamental error. *Com. v. Ricci*, 161 Pa. Superior Ct. 193, 196, 54 A. 2d 51; *Com. v. Wood*, 142 Pa. Superior Ct. 340, 16 A. 2d 319. The issue of whether the arresting officer acted within his rights in entering Truitt's premises was not raised at the trial. If instructions were desired on this point, the trial judge should have been requested to give them. The charge of the court defined the alleged crimes at length, and it was entirely adequate; we find no reversible error therein.

When the trial was resumed on the second day, counsel for appellants called the court's attention to the fact that a woman juror (No. 10) had been driven to her home after adjournment in the car of the alderman who had acted as the committing magistrate at appellants' preliminary hearing. Counsel moved for the withdrawal of a juror and asked the trial judge to declare a mistrial. Appellants' counsel, in his motion, stated that he did not claim any improper influence had been exerted upon the juror, but only that the opportunity had existed. The trial judge denied the motion. On the face of the

record, accepting counsel's statement as true, he clearly was not entitled to have his motion for withdrawal of a juror granted. It seems equally clear that counsel deliberately refrained from asking the trial judge to investigate and question the juror. He apparently felt that the investigation would not show any wrongdoing, and that it might antagonize the juror in question. It was counsel's duty to ask for an investigation if he desired it. The trial judge had the power to examine the juror to determine whether any improper influence had been exerted upon her (*Com. v. Deutsch,* 72 Pa. Superior Ct. 298, 318), and it probably would have been better if the judge had done so. In view of the fact that counsel did not allege that any improper influence had been exerted upon the juror, he merely having asserted that the opportunity existed, we find no error in the refusal of appellants' motion. " 'The question as to whether or not a juror has been guilty of misconduct, or has been subjected to improper influence affecting the verdict, is a fact to be determined by the trial judge from the circumstances, which must be clear and convincing to require a new trial, proof of mere opportunity to influence the jury being insufficient': 16 C. J. § 2669, p. 1161": *Com. v. Craven,* supra, 138 Pa. Superior Ct. 436, 447, 11 A. 2d 191, 196.

Judgments and sentences are affirmed.

GUNTHER, J., took no part in the consideration or decision of this case.