Commonwealth *v.* Kahn et al., Appellants.

Argued November 20, 1934.

Before TREXLER, P. J.,
KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER
and JAMES, JJ.

*Saul C. Waldbaum,* and with him *Errol White,* for appellants.

*Vincent A. Carroll,* Assistant District Attorney, and *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., January 4, 1935:

These six appellants were tried on bills of indictment charging them with riot and assault and battery. The jury returned verdicts of guilty against all of them on both counts.

It appears from the evidence adduced upon the part of the Commonwealth that on Saturday, July 14, 1934, at about noon, the defendants, members of the League against War and Fascism, assembled, along with other members of the league, under a prearranged plan, in front of the German Consulate, at 1420 Walnut Street, in the central part of the City of Philadelphia. Their conceded purpose was to stage a demonstration and to picket as a protest against the imprisonment of one Thalmann, a worker in prison in Germany. They wore placards with the printed slogan, and shouted, "Free Ernest Thalmann; down with Fascism; down with Hitler." The meeting of the 25 or 30 members of the organization and their conduct attracted a crowd of 150 to 200 persons to concentrate at that point. Some mounted police who were passing in that neighborhood saw the disorder and set about to disperse the crowd. The defendants, who appeared to be the ringleaders, interfered with the police in performing their official duty, they violently resisted arrest, and urged the crowd to release them.

The original purpose of the defendants may have been to picket peacefully, but their gathering, as could

have been anticipated, resulted in a dangerous, turbulent and shouting assemblage.

The appellants allege, first, that there was a manifest injustice done them in that they were not fairly and properly tried and convicted. There were no exceptions taken by the defendants, who were represented by counsel, to the admission of any of the testimony, nor were there any exceptions to the charge of the learned court below. Under the Act of June 24, 1895, P. L. 212, as amended (17 PS sec. 111 et seq., and secs. 1721-1726), this court has broad powers in reviewing records that come before us, and if we are convinced that a fundamental error has been committed, resulting in a manifest injustice, we may reverse a lower court. It appears conclusively that these defendants were guilty of creating a tumultuous disturbance, resisting officers, and of assault and battery, so that we could not say they were such innocent and inoffending persons that substantial injustice has been done them by the alleged failure of their attorney in the court below to properly protect their rights. The general rule is that a conviction will not be reversed where the alleged error was not raised in the court below by either exception or objection: Com. v. Dickson, 74 Pa. Superior Ct. 200; Com. v. Polichinus, 229 Pa. 311, 78 A. 382; Com. v. Delfino, 259 Pa. 272, 102 A. 949; Com. v. Bryson, 276 Pa. 566, 120 A. 552.

The appellants complain, however, that the trial judge did commit a fundamental error in instructing the jury as to the definition of a riot. A reference to his charge discloses that he said to the jury when he defined the crime of riot: "We will give you various definitions. A riot is where three or more persons actually do an unlawful act of violence either with or without a common cause or quarrel. Or it may be described and defined as follows: riot is a disturbance consisting of wild and turbulent conduct, especially a

large number of persons, for instance, a mob; a tumultuous disturbance of the public peace by three or more assembled persons who, in the execution of some proper object do an act in itself lawful or unlawful in a manner calculated to terrify the people." It is to the last definition that appellants direct their complaint. We find no objection to that definition; it is supported by ample authority. "A riot is commonly defined as a tumultuous disturbance of the peace by three or more persons assembled and acting with a common intent; either in executing a lawful private enterprise in a violent and turbulent manner, to the terror of the people, or in executing an unlawful enterprise in a violent and turbulent manner": 54 C. J. 826, §1.

We said in Com. v. Merrick, 65 Pa. Superior Ct. 482: "When the evidence clearly shows that meetings originally peaceful and orderly are so persisted in that they degenerate into dangerous and lawless assemblages, the offense of riot is complete." The object may be perfectly lawful, but if carried out in a violent and tumultuous manner, without legal authority, it constitutes a riot: Blackstone, Book IV, chap. 11, p. 146; Hawkins' Pleas of the Crown, chap. 65, §2; Com. v. Egan, 113 Pa. Superior Ct. 375, 173 A. 764; Com. v. Brletic, 113 Pa. Superior Ct. 508, 173 A. 686.

An examination of the charge of the court, taken as a whole, shows that it was a fair presentation of the facts involved. The jury were informed that the defendants had a right to assemble peacefully and to picket, and we find nothing therein that is improper or prejudicial to the defendants' rights. Nor do we find any conduct upon the part of the prosecuting attorney that is a subject of just complaint. The appellants take umbrage at the use of the word "mob" by both the court and the attorney, but we think that was not improper in view of the facts, nor was it preju-

dicial to the defendants' rights, and at the trial no complaint was made to the remarks of either counsel or the court. Interrogating witnesses as to where they were born, whether they were citizens of this country, and questions of that character, were not intrinsically improper. The matters complained of and the general conduct of a trial come under the control of the trial judge. We do not interfere therewith, unless there is a manifest abuse of discretion, which is not present in this case. Trial counsel evidently was not impressed with any of the alleged objectional features as he took no exception thereto.

We have carefully reviewed this record and find there was evidence sufficient to sustain the verdicts of the jury, and that the trial was conducted properly by the court below.

Judgments are affirmed, and it is ordered that the defendants appear in the court below at such time as they may there be called, and that they be by that court committed until they have complied with the sentences or any part of them which had not been performed at the time the appeal in each case was made a supersedeas.