## Commonwealth v. Paul et al., Appellants.

Submitted May 9, 1941.

Be-

fore KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Isadore Krasno* and *Prall B. Roads,* for appellants.

*Robert M. Harris,* Deputy District Attorney, *Penrose Hertzler* and *M. M. Burke,* for appellee.

OPINION BY RHODES, J., July 18, 1941:

Appellants, Gomer Paul and Peter Paul, were each charged with conspiracy, inciting to riot, and riot. They were tried together. At the conclusion of the Commonwealth's case their demurrers were sustained to the charges of inciting to riot and conspiracy. The jury returned a verdict of guilty of riot against both appellants. Appellants' motions in arrest of judgment and for new trial were overruled, and sentences were imposed.

On these appeals the sole question raised is the sufficiency of the evidence to sustain the convictions. The two assignments of error relate to the refusal of appellants' first point for charge, and to the overruling of appellants' motions in arrest of judgment and for new trial. Although the assignments are incomplete,

we shall consider the single matter pressed on these appeals, and both will be disposed of in this opinion.

The occurrences which are the foundation of the indictments took place on September 25, and October 5, 1939. Appellants, together with two or three hundred others, on October 5, 1939, a greater number than on September 25, 1939, went to a point about one and a half miles west of the village of Reevesdale, in Schuylkill County, where a mining operation was in progress on the land of the Philadelphia and Reading Coal and Iron Company. The mining being carried on at that point was surface mining by means of a steam shovel. Appellants and the others disembarked from trucks and automobiles on the public highway, and proceeded to the scene of the mining operation which was a considerable distance from the highway. The crowd was loud and boisterous. They demanded that the operators of the shovel cease their work, and that the shovel be removed to the public highway. There were numerous threats that in the event the shovel was not moved as directed it would be blown up. Some of the crowd carried sticks and stones. Appellants acted as the leaders or spokesmen in making demands upon the operators of the steam shovel. Not only were the workmen engaged in the mining operation intimidated by threats which emanated from the crowd, but some were actually put under restraint. For example, one witness testified: "A. I went to get into the truck to go away. One of them said, 'don't let him get away.' 'Watch the truck.' So they appointed a guy to watch me, and this guy stood up there and I believe he was under the influence of liquor, and he said, 'you move when I tell you to move,' and he said, 'if you try to get away and you move the truck where I tell you to or else,' and he moved for his back pocket."

As a result of the demands and threats the shovel was moved from the scene of operation to the public

highway. Appellant Peter Paul then stood upon a truck and commended the group for the action which they had taken, and urged that they should stick together so that similar operations might be prevented. Appellants admitted that they were on the scene at the time the shovel was moved on October 5th; that they were with the crowd which assembled; and that they acted as spokesmen. They denied, however, that any threats were made by them or by anyone else in their presence, and testified that the operators of the shovel were merely requested to cease operation and move it.

Appellants contend that the convictions cannot be sustained as there was no proof of either actual force or violence, and that such proof was essential to sustain the charge of riot.[1]

In his comprehensive charge to the jury, to which no specific exception was taken or complaint made, the trial judge said: "Now, a riot is commonly defined as a tumultuous disturbance of the peace by three or more persons assembled and acting with a common intent, either in executing a lawful private enterprise in a violent and turbulent manner to the terror of the people or in executing an unlawful enterprise in a violent and turbulent manner. The essential element of the offense of riot is the assembling together of three or more persons in a riotous, tumultuous and disorderly manner and proceeding with a common intent and purpose to the commission of unlawful acts which tend to

---

[1] Section 401 of the Act of June 24, 1939, P. L. 872, 18 PS §4401, provides: "Whoever participates in any riot, rout, unlawful assembly or affray, is guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to imprisonment not exceeding three (3) years, which imprisonment may be at separate or solitary confinement at labor, or to pay a fine not exceeding one thousand dollars ($1,000), or both." Cf. section 402 of the Act of June 24, 1939, P. L. 872, 18 PS §4402. The effective date of the act was September 1, 1939.

alarm and terrify law abiding citizens engaged in the peaceful exercise of constitutional rights and privileges. Now, that's the offense and the elements of the offense with which the defendants, Peter Paul and Gomer Paul stand here before you today indicted." After giving in detail the testimony of the various witnesses, and stating that there was no dispute that the Correale Construction Company, which conducted the mining operations, and its employees were at the time engaged in a lawful enterprise, and that the crowd which went upon the property of the Philadelphia and Reading Coal and Iron Company, where the mining was being conducted on September 25 and October 5, 1939, had no legal right to compel a discontinuance, either temporary or permanent, of the operations that were then there in progress, he went on to say: "Did they approach in the manner described by the witnesses for the Commonwealth in a loud, boisterous, turbulent manner, in such a manner as to terrify and bring terror to the people who were in the vicinity or to the people engaged in the operation of the mining by means of a power shovel. Or, on the other hand, did they, as alleged by the defendants in this case, approach in a quiet orderly fashion without confusion, without threats, without any violence or threats of violence, and did they entreat or ask in that manner that the operations of the shovel be discontinued or be stopped and that the shovel should be moved from the scene it was then operating to the highway. For as alleged by the Commonwealth and as stated by the Commonwealth witnesses, this group of men over seventy on the 25th day of September and 200 to 300 on October 5th, did approach in a loud, boisterous, turbulent, tumultuous manner, and demanded, as they alleged they did, that this operation cease, and demanded that the shovel be moved and demanded that the employee should move it in the manner directed by the crowd."

In the court below, on the motions for a new trial

and in arrest of judgment, it was argued by appellants, as here, that there was an absence of any personal injury or property damage. This contention was properly answered by the court below in its opinion overruling appellants' motions, when it said: "Personal injury or violence to any individual or damage to property is not an essential element [of] the crime of riot." That the common purpose or intent to commit an unlawful act has been realized or carried out without actual violence or property damage does not negative the presence of a riot. Actual force or violence is not an indispensable element of riot. This was recognized in Hawkins' Pleas of the Crown, 6th Ed., p. 295, and in 4 Blackstone's Comm. 146. See, also, *Com. v. Brletic et al.*, 113 Pa. Superior Ct. 508, 173 A. 686. In *Com. v. Kahn et al.*, 116 Pa. Superior Ct. 28, at page 31, 176 A. 242, at page 243, we quoted with approval the definition of riot as given in 54 C. J. 826, §1: "A riot is commonly defined as a tumultuous disturbance of the peace by three or more persons assembled and acting with a common intent; either in executing a lawful private enterprise in a violent and turbulent manner, to the terror of the people, or in executing an unlawful enterprise in a violent and turbulent manner." See, also, 3 Wharton's Criminal Law, 11th Ed., §§1853-1856; *Com. v. Dupuy et al.*, 4 Clark 1.

In *Com. v. Apriceno*, 131 Pa. Superior Ct. 158, at page 161, 198 A. 515, at page 517, this court recently said: "The essential element of riot which constituted the basis of the indictments in the case at bar was the assembling together of three or more persons in a riotous, tumultuous, and disorderly manner, and proceeding with a common intent and purpose to the commission of unlawful acts which tended to alarm and terrify law-abiding citizens engaged in the peaceful exercise of their constitutional rights and privileges."

Although the evidence does not establish that there

was any property damage, or that personal injury was suffered by anyone as a result of the conduct of appellants and those with whom they were associated, it was sufficient to sustain the verdicts of the jury. Even though it be said there were no circumstances either of actual force or violence, there were circumstances "at least of an apparent tendency thereto, as are naturally apt to strike terror into the people; as the show of armour, threatening speeches, or turbulent gestures, for every such offense must be laid to be done in terrorem populi": Hawkins' Pleas of the Crown, supra, 6th Ed., p. 295. The evidence clearly indicates that there was an assembling together in a riotous, tumultuous, and disorderly manner of two or three hundred persons led or directed by appellants; that their conduct was such as would tend to, and did, terrify and alarm peaceful citizens; that they proceeded with a common intent and purpose to do an act in pursuance of such common intent, to wit, stop the mining of coal; and that they did it in an unlawful manner, that is, by threats of violence, by intimidation, and by the menacing attitude of large numbers assembled together. See *Com. v. Merrick et al.*, 65 Pa. Superior Ct. 482, 491. The establishment of these elements was sufficient to show a riot; and it is undisputed that appellants participated therein.

The assignments of error are overruled.

The judgment in each appeal is affirmed, and it is ordered that the appellants severally appear in the court below at such time as they may there be called, and that they be by that court committed until they have complied with their respective sentences or any part of them which had not been performed at the time each appeal was made a supersedeas.