## Commonwealth *v.* O'Toole, Appellant.

Argued September 30, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*S. H. Sarraf,* for appellant.

*Earle R. Jackson,* for appellee.

OPINION BY DITHRICH, J., October 30, 1946:

James P. O'Toole, the appellant, was one of four persons charged with the crime of robbery. The grand jury ignored the bill of indictment against one of the two women in the case, the learned trial judge directed a verdict of not guilty as to the other woman, and submitted the case to the jury as to O'Toole and the remaining co-defendant, Joseph Malone. They were both found guilty, and from the overruling of his motion in arrest of judgment and for a new trial, O'Toole brings this appeal. Malone did not appeal.

The evidence against O'Toole was wholly circumstantial. In substance, it was that he and Malone struck up an acquaintance with one John L. Lee in the barroom of the York Hotel on the North Side of the City of Pittsburgh, where Lee, who was a resident of Ohio, was a guest. After having a few drinks together there, it was suggested by Malone or O'Toole that they go to Lapin's Cafe on Federal Street, also on the North Side. They stayed there drinking until the place closed at 2:00 A.M. While there they were joined by the common-law wife of Malone and by Ruth Dunn, a friend of O'Toole's. Before the bar closed, Lee tried to buy a bottle of whisky, but the bartender refused to sell him one. Malone then sug-

gested that he could get one for him, and upon being given $3.00 by Lee, he left and returned with a bottle of liquor. He said he couldn't give the bottle to Lee in the saloon, so Lee said, "Let's go" and after they got outside, Malone gave him the bottle and he put it in his coat pocket. They then started to go to some club, but on the way Lee ". . . thought the best place for me was in the hotel."

When the party reached the rear of the North Side Carnegie Library, Lee ". . . started to cut across . . ." when Malone put his arm around his neck and "lifted me up" and someone of the four, he couldn't tell which one, removed his wallet containing $70.00 or $80.00 from a rear pocket of his trousers ". . . and away they go." He reported the robbery to the police and from the description furnished by him, the four were taken into custody.

Appellant demurred to the Commonwealth's evidence, and the demurrer was overruled. In our opinion, the evidence against O'Toole, while far from being strong, was sufficient to take the case against him to the jury. Cf. *Commonwealth v. Johnson,* 153 Pa. Superior Ct. 437, 34 A. 2d 170. The first and second assignments of error will, accordingly, be dismissed.

The third assignment of error is in part to the overruling of the motion for a new trial. While no exception was taken to the charge of the learned trial judge, we are constrained to order a new trial because of what we deem to be basic and fundamental error in the charge. *Commonwealth v. Gold,* 155 Pa. Superior Ct. 364, 38 A. 2d 486; *Commonwealth v. Bird,* 152 Pa. Superior Ct. 648, 33 A. 2d 531; *Commonwealth v. Kahn,* 116 Pa. Superior Ct. 28, 176 A. 242; *Commonwealth v. O'Brien,* 312 Pa. 543, 168 A. 244.

The appellant did not take the stand in his own defense. Notwithstanding the provisions of Section 10 of the Act of May 23, 1887, P. L. 158, 19 P.S. 631, that ". . . the neglect or refusal of any defendant, actually upon trial in a criminal court, to offer himself as a wit-

ness . . ." may not ". . . be adversely referred to by court or counsel during the trial." the learned trial judge called the failure of appellant to testify to the attention of the jury in the following manner: "Now, O'Toole did not take the witness stand. You may make something out of that . . .". What was the jury to make out of it? What would the average juror make out of it but that O'Toole's guilt might be inferred from his failure to take the witness stand in his own defense. True, the learned trial judge went on to explain that ". . . the law cannot compel a defendant to take the witness stand . . ." and the jury should ". . . not, therefore, attach any significance to the fact that O'Toole did not take the witness stand . . ." but he wound up that portion of his charge by saying, "It is a matter for you to take into consideration and for you to decide in this case."

This court held in *Commonwealth v. Viscuso,* 82 Pa. Superior Ct. 403, 406, that it was reversible error for the jury to be told by the court ". . . that they had the right to consider, in determining the question of guilt or innocence, the fact that defendant did not take the stand. Surely this was treating his failure to take the stand as creating a presumption against him." See, also, *Commonwealth v. Foley,* 24 Pa. Superior Ct. 414.

Earlier in the charge the learned trial judge, no doubt inadvertently, said, ". . . he (Lee) says that O'Toole may have actually robbed him but he is not sure he actually put his hands in his pocket . . .". We have searched the record in vain for any such testimony. The nearest approach to it is Lee's testimony that ". . . they got into the back pocket of my pants . . .". "They" referred to the four persons all of whom were in back of him when he was held up. He could not single out O'Toole as the one who "actually robbed him" any more than he could single out any of the others. All he was sure of was that Malone was the one who "strongarmed" him.

In *Commonwealth v. O'Brien,* supra, where the trial court had inadvertently misquoted a material part of the testimony and this court on appeal had affirmed the judgment and sentence, the Supreme Court in reversing the judgment said, page 546 : "The Superior Court noted this variance and called attention to the desirability of a trial judge adhering to 'the exact words alleged to have been employed by the defendant,' but declined to reverse the case on that ground because defendant's counsel had taken no exception to the charge. In this we believe that learned court erred. A man is not to be deprived of his liberty and reputation because of the inadvertence of a trial judge or the carelessness of his counsel in failing to call the attention of the trial court to palpable error which offends against the fundamentals of a fair and impartial trial."

The variance between the testimony of Lee and the learned trial judge's account of it, followed by his charge that the jury could "make something out of" O'Toole's refusal to take the stand, had the effect of depriving appellant of a fair and impartial trial.

The third assignment of error is sustained in part. The judgment is reversed and a venire facias de novo awarded.