## Blue Ridge Textile Co., Inc., v. The Travelers Indemnity Co.

**56**

*Edmund P. Turtzo*, for plaintiff.

*James B. McGiffert*, for defendant.

BARTHOLD, P. J., November 6, 1961.—This case is before the court en banc upon defendant's motion for judgment n. o. v. after a jury verdict for plaintiff in the sum of $15,953.63.

Plaintiff instituted an action in assumpsit against defendant to recover damages for the loss of a cargo of textile fabrics insured with defendant company. The loss occurred in New York City on February 23, 1960, when two armed robbers stole insured's tractor-trailer containing the cargo.

The policy insured plaintiff "against loss or damage directly caused by . . . (h) theft of entire shipping package from the vehicles described, excluding infidelity of assured's employes."

An endorsement attached to the policy contained the following terms and conditions:

"In consideration of the rate at which this insurance is written, it is a condition precedent to the liability of the insurer hereunder and to the effectiveness of this policy that the trucks scheduled in this policy are equipped with the Senior Babaco Alarm System; that

such Babaco Alarm System shall be maintained in working order at all times, Inspected and Approved Once Each Month by the Babaco Alarm Systems, Inc., and/or any of its authorized representatives, and proper inspection certificates issued.

"It is also a condition precedent to the liability of the insurer hereunder and to the effectiveness of this policy, that all the Babaco equipment protecting the cargo compartment of each vehicle equipped as aforesaid shall be in the 'on' position while merchandise is contained in said compartment except with respect to any truck and/or trailer and/or semitrailer which is actually being loaded, and/or unloaded and that while any truck and/or trailer and/or semi-trailer is being loaded and/or unloaded, at least one man shall be in actual attendance on the cargo compartment, guarding the contents thereon.

"The assured agrees, by the acceptance of this policy, that the foregoing conditions precedent relate to matters material to the acceptance of the risk by the insurer.

"Failure of the insured to comply with any of the foregoing conditions precedent in any instance shall render policy null and void."

At the trial, plaintiff proved the policy, the loss of the cargo and its value $15,953.63. Defendant admitted the value of the cargo, the fact that plaintiff lost the cargo through theft, and also admitted that plaintiff's vehicle was equipped with a "Senior Babaco Alarm System" in operable order. Plaintiff did not choose to rest its case at this point but called as a witness its employe, the operator of the tractor-trailer, to testify concerning the circumstancs surrounding the theft. We have set forth in the following paragraphs the material portions of his testimony.

The vehicle used for the transportation of the cargo was an enclosed trailer drawn by a separate motor

tractor. The vehicle was equipped with a theft protection device known as the "Senior Babaco Alarm System" mounted in a box beneath the body of the trailer. The box contained an alarm system consisting of two parts, the sealed load (S. L.) alarm and a parking (P.) alarm, each of which had an "on" and "off" position operated by separate keys. The sealed load alarm is designed to prevent the unauthorized opening of the trailer or cargo compartment. It is turned in the "off" position when the trailer is loaded or unloaded, and in the "on" position after the cargo is loaded in the trailer and the trailer doors are locked. When the sealed load alarm is in the "on" position, it is impossible to open the rear doors of the trailer or cargo compartment without sounding the alarm. The parking alarm is designed to prevent the unauthorized movement of the vehicle when combined as a tractor-trailer. When the parking alarm is in the "on" position, it is impossible to move the vehicle without sounding the alarm. The parking alarm must be kept in the "off" position while the vehicle is in motion and should be in the "on" position when the vehicle is parked.

On February 23, 1960, while plaintiff's tractor-trailer was parked on the street at or near 255 Church Street, New York City, the premises of Seymour Knapp, the consignee, a robbery occurred and the entire contents of the trailer was stolen. Plaintiff's truck-driver Locke described the occurrence as follows:

"About five minute of nine I happened to look out the back window of the tractor, and I noticed a light in the building that I hadn't noticed before, thinking they were there a little ahead of time, because they had a pretty good order to be delivered, and I got out of the truck and walked back along the trailer and inserted the key that turned my alarm off, ready to open the doors, walked over to the door, to go in and

give them the bill of lading and get the stuff started, and there was nobody in. So I turned around and went back—whether I turned the key on exactly, I don't remember that any more, but I took the key back out and went back in the truck, unlocked the cab and went back in the truck and sat there some more. And about five after nine, which is about ten minutes later, I happened to look out the window, and I saw two guys standing in the doorway. Thinking they were the fellows that were going to unload—they looked familiar —I got back out of the truck, and I only got so far as the fender, running board, when somebody stuck a gun in my back, told me to get back in the cab, do as I was told, and I wouldn't get hurt. So I done as they told me. They told me, 'Open the door on the other side of the cab,' and when I did that, another guy jumped in, stuck a gun . . . he had it in his coat pocket, stuck it up on my head, he told me, he says, 'Face the floor,' he said, 'I'll put a hole right through your head,' he said, 'Do as you are told, and you won't get hurt.' He instructed me to put the keys in the ignition and asked me where the burglar alarm keys was; . . . So I told him they were hanging there on the heater, and he asked which was which, and I told him, I said, 'The seal alarm key got "S.L." on,' and I said, 'The "P" key is the parking key.' He asked whether it was "On" or "Off," and I was all worked up and didn't know whether I was coming or going, and I told him it was off, and he said, 'Are you sure about it?' And I said, 'No, I'm not sure about it, but I think it's off' 'But,' I said,' 'You turn the key the other way, and it's off.' I said 'You turn it the one way, and it goes "On," and the counterclockwise it goes "Off".' So he says, 'All right.' He says, 'Get out and behave yourself.' And when I got out, they took me down the street, which was about 50 feet behind the trailer, to a car that was parked there, . . . So they took off with me and rode

me around for three hours, . . . Then about ten minutes of twelve they dumped me off out in the woods."

After eliciting the above testimony, plaintiff rested its case, whereupon defendant moved for a compulsory nonsuit which was denied. Defendant rested without offering any testimony and submitted a point for binding instructions which was also denied.

The question presented is whether upon the evidence adduced by plaintiff the loss is covered by the policy.

One of the controlling issues involved is whether the sealed load alarm was in the "on" or "off" position when the theft occurred.

Because of the importance of this issue, we have hereinabove quoted at length the testimony of plaintiff's truck driver. An examination of his testimony will reveal that at five minutes of nine he turned the sealed load alarm off and left the tractor-trailer to ascertain whether there was anyone on consignee's premises to accept delivery; that upon finding no one on the premises he returned to the tractor-trailer, took the key out of the alarm box and went back into the cab of the vehicle and waited; that he did not remember whether he had turned the sealed load alarm back to the "on" position when he took the key out of the alarm box; that five minutes after nine he again got out of the tractor-trailer when he was set upon by two armed robbers; that he initially told one of them that the sealed load alarm was off but later stated, "I am not sure about it, but I think it's off."

Under this evidence and the presumption that a status once established continues until the contrary appears,[1] the only justifiable finding is that the sealed load alarm was in the "off" position when the theft oc-

---

[1] Dinger v. Friedman, 279 Pa. 8, 18; McConville v. Ingham, 268 Pa. 507, 518; Fuller's Estate, 250 Pa. 78; Oller v. Bonebrake, 65 Pa. 338, 344.

curred. A finding that plaintiff's truck driver turned the sealed load alarm back to the "on" position would be pure conjecture.

The next question is whether plaintiff's failure to have the sealed load alarm in the "on" position at the time of the theft was such noncompliance with the terms of the policy as to prevent recovery. The answer to this question depends upon the terms of the insurance contract.

Plaintiff is bound by the terms of the contract. The insured is presumed to know the contents of his contract.[2]

The insurance contract specifically provides, "In consideration of the rate at which this insurance is written, it is a *condition precedent to the liability* of the insurer . . . and *to the effectiveness of this policy* . . . , that all the Babaco equipment protecting the cargo compartment . . . shall be in the 'on' position while merchandise is contained in said compartment except with respect to any truck and/or trailer and/semi-trailer which is actually being loaded, and/or unloaded . . ." (Italics supplied.)

This language is plain and unambiguous. It prescribes as a condition precedent to liability that the alarm *shall* be in the "on" position while merchandise is contained in the compartment. In view of this clear provision, it would be improper to resort to the familiar rule of construction that an insurance policy is to be construed most strongly against an insurer. "That rule, . . . becomes germane only when the meaning of the writing in action is doubtful, uncertain or ambiguous. It has no proper role in the interpretation of a writing which is clear and unmistakable, . . . To relieve plaintiff, by the rule of construction, from his

[2] Butler Candy Co. v. Springfield Fire and Marine Ins. Co., 296 Pa. 552, 557, 558; Smith v. West Branch Mutual Fire Insurance Company, 31 Pa. Superior Ct. 29.

deliberate contractual undertakings would be tantamount to abandoning the judicial function of interpreting written agreements according to the ordinary meaning of their plain words:" Ehrlich v. United States Fidelity and Guarantee Company, 356 Pa. 417, 423.[3]

Plaintiff's noncompliance rendered the policy void. "The effect of a condition precedent in a policy is different from that of a representation or a warranty. If a condition precedent is inserted in a contract of insurance, the policy does not take effect until the condition is fulfilled; the breach of a condition precedent therefore renders the policy void, without reference to any representations or warranties by the insured:" 19 P. L. Encyc. Insurance, §212, pp. 11-12.

On the question of burden of proof, plaintiff argues that it was defendant's burden to prove that the sealed load alarm was in the "off" position at the time of the theft and that defendant did not meet this burden. Plaintiff relies upon the general rule that an insurer who seeks to escape liability on the theory that contract has been avoided or forfeited must show the violation of a condition avoiding an otherwise valid policy. The rule cannot be invoked in the present case because the insurance contract made the performance of the covenants or conditions enumerated therein conditions precedent to liability. The rule is inapplicable for the additional reason that the case was pleaded by plaintiff and, likewise, tried on the theory that it was incumbent upon plaintiff to prove as part of its case its compliance with the conditions relative to the risk. Assuming, therefore, that all plaintiff needed to do to establish a prima facie case was to prove a loss within the insuring clause of the policy, what plaintiff in fact

---

[3] The general principles governing the construction of contracts are set forth in 18 P. L. Encyc., Insurance, §91, pp. 546-47.

did was to prove affirmatively its failure to comply with one of the covenants or conditions of the policy. That being so, plaintiff is without just cause for complaint on that score: Ehrlich v. United States Fidelity and Guaranty Company, 356 Pa. 417, 424.

Plaintiff further contends that even if it is assumed that the only justifiable finding under the evidence is that the sealed load alarm was in the "off" position at the time of the theft, such finding does not preclude plaintiff's right to recover, first, because the violation had no causal connection with the loss, and second, because plaintiff had substantially performed its contract. Both reasons are without legal merit.

The liability of the insurer under the terms of the insurance contract depended upon the insured's compliance with certain conditions relating to matters material to the acceptance of the risk by the insurer. In the circumstances, the fact that there may have been no causal relation between the violation and the loss is wholly without bearing on the question of whether plaintiff breached the conditions. This is not an action in trespass based upon negligence but an action in assumpsit founded on contract.[4] The very fact that the sealed load alarm was in an "off" position at the time of the theft relieved defendant from liability according to the specific terms of the policy.[5]

The policy provided:

"The assured agrees, by the aceptance of this policy, that the foregoing conditions precedent relate to matters material to the acceptance of the risk by the insurer.

"Failure of the insured to comply with any of the

---

[4] Cf. Ehrlich v. United States Fidelity and Guaranty Company, 356 Pa. 417, 427, 428.

[5] Cf. Speca v. Bucci Construction Co., Inc., 139 Pa. Superior Ct. 76, 80.

foregoing conditions precedent in any instance shall render policy null and void."

In determining whether the doctrine of substantial compliance may be invoked in the instant case, it is necessary to distinguish between conditions in the nature of absolute promises with reference to the risk and conditions subsequent. The importance of the distinction is noted in Cooley's Briefs on Insurance, 2d ed., volume 3. At page 2337, this learned text writer states: "The Supreme Court of Pennsylvania regards a substantial compliance with a condition subsequent as sufficient (Fame Insurance Co.'s Appeal, 83 Pa. 396), though recognizing the rule that strict compliance is necessary where the condition is in the nature of an absolute promise in reference to the risk. Farmers' & Mechanics' Ins. Co. v. Simmons, 30 Pa. 299; McClure v. Watertown Fire Ins. Co., 90 Pa. 277"

Under the terms of the policy under consideration, the conditions were denominated "conditions precedent". They were definitely in the nature of absolute promises in reference to the risk. Therefore, the doctrine of substantial compliance has no application.

Furthermore, even in cases where the doctrine of substantial compliance is applicable, the law requires that, "One must make an honest, conscientious effort to perform an obligation or requirement before he can assert that his performance was substantial. 'The equitable doctrine of substantial performance is intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right ... may not be forfeited by reason of mere technical, inadvertent, or unimportant omissions or defects ...'": Ehrlich v. United States Fidelity and Guaranty Company, 356 Pa. 417, 429.[6]

---

[6] See also Cooley's Briefs on Insurance, 2d ed., vol. 3, p. 2338.

In the case at bar, the insured took no definite, positive steps looking to the fulfillment of its covenants. The facts as to what plaintiff did are not in dispute. Plaintiff gave its truck driver no instructions as to the operation of the alarm system. Plaintiff's neglect in this regard is significant in light of the specific requirements of the policy. The present case is readily distinguishable from the case of J. B. Liebman & Co., Inc., v. Aetna Casualty and Surety Co:, 124 Pa. Superior Ct. 69, a case involving insured's covenants with regard to the employment of a watchman. In that case, insured instructed the watchman to be on duty in accordance with the requirements of the policy.

Plaintiff advances a further contention that its truck driver was "unloading" at the time the theft occurred and was, therefore, not then required to keep the sealed load alarm in the "on" position. This contention is based upon the assumption that plaintiff's vehicle was *actually* being unloaded although the uncontradicted evidence established that plaintiff's truck driver was in fact *waiting* to unload at the time the theft occurred. The terms of the policy exclude such assumption. The policy provides as a condition precedent to liability and to the effectiveness of the policy "that all the Babco equipment protecting the compartment shall be in the 'on' position while merchandise is contained in said compartment *except* with respect to any truck and/or trailer and/or semi-trailer which is *actually* being loaded . . . or unloaded." (Italics supplied.) Manifestly, the term "actually" was inserted in the policy so as to avoid the type of strained construction now advanced by the insured.

For the reasons hereinabove stated, we are firmly convinced that defendant's motion for judgment n.o.v. must be granted.

*Order*

And now, November 6, 1961, defendant's motion for judgment n.o.v. is granted and rule made absolute, and judgment is directed to be entered in favor of defendant upon payment of the jury fee and the evidence taken upon the trial is certified and filed and made part of the record.