## Commonwealth *v.* Hayes, Appellant.

Argued March 18, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Herbert L. Floum,* with him *Herman Weiner,* for appellant.

*Thomas M. Reed,* Assistant District Attorney, with him *Patrick F. Casey* and *Joseph M. Smith,* Assistant District Attorneys, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for appellee.

OPINION BY JACOBS, J., April 15, 1965:

Appellant was convicted by a jury of the crimes of inciting to riot, participating in a riot and conspiracy to commit riot. Appellant's motions in arrest of judgment and for a new trial were refused by the court below and sentence was imposed. In his appeal the appellant states the sole question to be whether or not the evidence was sufficient to warrant his conviction of the offenses charged. He does not allege any trial errors or make any objection to the trial judge's charge.

Appellant was charged with committing these various crimes in connection with the disturbance which took place in Philadelphia on the night of Friday, August 28, 1964, and the morning of Saturday, August 29, 1964. The appellant admits that a riot took place at that time but he denies that he participated in the same or incited the same or conspired with anyone else to bring about a riot.

A riot "is commonly defined as a tumultuous disturbance of the peace by three or more persons assembled and acting with a common intent; either in executing a lawful private enterprise in a violent and turbulent manner, to the terror of the people, or in executing an unlawful enterprise in a violent and turbulent manner." *Commonwealth v. Kahn,* 116 Pa. Superior Ct. 28. Participating in a riot is made a misdemeanor by §401 of The Penal Code, 18 P.S. 4401.

Inciting to riot is not a statutory offense in Pennsylvania but it is a common law crime. "Inciting to riot, from the very sense of the language used, means such a course of conduct, by the use of words, signs or language, or any other means by which one can be urged on to action, as would naturally lead, or urge other men to engage in or enter upon conduct which, if completed, would make a riot." *Commonwealth v. Merrick*, 65 Pa. Superior Ct. 482 at 491.

Conspiracy to do an unlawful act is made a crime by §302 of The Penal Code, 18 P.S. 4302. The elements of the crime are a combination or a confederacy of two or more persons, with criminal intent, to do an unlawful act. The Commonwealth is not required to show an express agreement but the elements of the crime may be inferred from the actions of the parties. *Commonwealth v. Gaines*, 167 Pa. Superior Ct. 485.

Since it is admitted that a riot occurred in Philadelphia at this time and place, we need not further discuss this element of the crimes charged. So far as the other elements of the crimes are concerned our only task is to determine whether or not there was sufficient evidence from which the jury could find the defendant guilty beyond a reasonable doubt. In considering the motion in arrest of judgment the testimony must be read in the light most favorable to the Commonwealth and we must accept as true all the Commonwealth's evidence upon which, if believed, the jury could properly have based its verdict. *Commonwealth v. Whiting*, 409 Pa. 492. It is not within the province of the appellate court to pass upon the credibility of the witnesses. *Commonwealth v. Logan*, 361 Pa. 186.

The Commonwealth's evidence shows that the appellant was present at 22nd Street and Columbia Avenue, in the City of Philadelphia, and at other points in the near vicinity from approximately 9 p.m. on Fri-

day, August 28, 1964, until sometime in the morning of Saturday, August 29th. When appellant was first observed hundreds of people were milling around. The appellant was leading the people in cheering "We want freedom. We want justice." Those cheers were directed at the police who were trying to get the people back on the curb. The people were in the street and the appellant was on the curb in front of the people leading the cheers. Appellant asked one witness to help him get the people away from the police. A policeman heard the appellant say "What are the policemen doing here? Why don't they have a warrant?" Appellant told another police officer that that police officer should get out of the area or there would be trouble. Appellant told the police that he was in charge of the area. Appellant was heard to say to the crowd "Wait until we get organized, then we will get these m.f. cops." The appellant would talk with the people in the crowd in front of him, then he would turn around facing the police and lead the crowd in their cheer. He was also seen moving through the crowd and linking arms with them. Shortly after midnight, when the authorities were trying to disperse the crowds, people in the crowd were seen coming to the appellant and talking to him and then moving to other parts of the crowd. There was evidence to show that when the appellant first arrived on the scene no violence had as yet occurred. After the appellant lead the cheering, the crowds increased in size and, as one witness put it, "and then everything just seemed to cave in at once. Bottles and bricks and whatever kind of missiles that could be thrown started to rain down from the air, and windows started breaking all over the place." There was also testimony to the effect that after midnight any time anyone would urge the crowd to disperse the appellant would yell "No, No." At about the same time there was testimony that a

man by the name of Hall was speaking against the police and the church and the deity and every time Hall uttered a denouncement the appellant would yell his approval.

It is obvious that the appellant was participating in a riot. He was there at the time the riot took place and was part of the crowd which was rioting. In fact, all persons who are voluntarily present and not assisting in the suppression of a riot, where their presence tends to encourage the rioters, shall be prima facie inferred to be participants. *Commonwealth v. Merrick*, 65 Pa. Superior Ct. 482. Appellant's action in leading the cheers directed at the police who were trying to get them to disperse and shouting "What are the policemen doing here?" and leading the crowd in the chant "We want freedom. We want justice" until the crowd grew in size to a point where it was uncontrollable was such action that the natural result of it would be to cause a riot and was sufficient to show that the appellant was guilty of inciting to riot. In talking to the crowd periodically before leading them in cheers, in deploying persons through the crowd and in noisily approving Hall's denunciatory statements the appellant demonstrated his confederacy with others to bring about the riot. The Commonwealth's evidence, if believed, was sufficient to support the conviction of the appellant on all three charges and his motion in arrest of judgment was properly denied.

Appellant's argument that he can't be convicted because it hasn't been shown that he committed an act of violence has no validity. "Personal injury or violence to any individual or damage to property is not an essential element of the crime of riot". *Commonwealth v. Paul*, 145 Pa. Superior Ct. 548 at 553.

As pointed out above, the appellant has alleged no trial errors in support of his motion for a new trial. Where, as here, we have found that the Common-

wealth's evidence was sufficient to support a verdict of guilty we may not arrest judgment but we may grant a new trial if the verdict is against the weight of the evidence. *Commonwealth v. Harbaugh,* 197 Pa. Superior Ct. 587. Therefore, we have carefully reviewed the evidence to determine whether or not the verdicts were contrary to its weight. We find that the evidence is conflicting and the question was one of credibility. The jury chose to believe the evidence of the Commonwealth and we find no evidence on behalf of the appellant which brings us to the conclusion that the verdict was contrary to the weight of the evidence. We cannot substitute our judgment as to credibility for that of the jury. Appellant's motion for a new trial was properly denied by the court below.

Judgments of sentence affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the order of supersedeas was entered.