## Booker Brothers, Inc. v. American Casualty Company of Reading, Pa.

*Franklin Poul,* for plaintiff.

*Herman J. Obert,* for defendant.

McDEVITT, J., September 20, 1971.—This case was tried before the Hon. John J. McDevitt, 3rd, without a jury, on May 11, 1971, on an agreed statement of facts. The issue involved here is the extent of coverage under an insurance policy known as a Broker's Blanket Bond. Plaintiff contends the policy provides $100,000 coverage for its losses caused by the acts of two of its employes. Defendant, on the other hand, contends that its liability extends only to $50,000, the policy limit for losses caused by an employe or employes who collude with each other or another to cause the loss. A subsidiary issue concerns insurer's liability for interest for withholding payment under the policy.

## FINDINGS OF FACT

1. All losses for which plaintiff makes claim were the direct result of frauds perpetrated on the customers of plaintiff by John H. Carr, an employe of plaintiff. In perpetrating those frauds, John H. Carr was assisted by Ann P. Gallagher, another employe of plaintiff.

2. Plaintiff is unable to prove any losses sustained by it which are involved in this litigation and to which the activities of Ann P. Gallagher did not contribute.

3. Plaintiff is unable to prove any losses sustained by it which were attributable to any dishonest act of Ann P. Gallagher alone in which John H. Carr was not concerned and implicated.

4. Plaintiff duly complied with all requirements of the bond, including the furnishing of prompt notice to defendant.

5. Upon receipt of proofs of loss dated April 30, 1962, from plaintiff, defendant conditionally tendered plaintiff $50,000 for the loss sustained and in satisfaction of the obligation set forth in the Broker's Blanket Bond.

6. Plaintiff declined the conditional tender and has continuously demanded and brought an action to recover the sum of $100,000 for the loss sustained by reason of the dishonest acts of John H. Carr and Ann P. Gallagher.

7. Defendant has at all relevant times admitted liability for $50,000, but has refused to pay any sums to plaintiff because plaintiff was demanding an additional $50,000 and refused to release its claim to said additional $50,000.

## DISCUSSION

A Broker's Blanket Bond is a form of indemnity insurance combining, in one instrument, separate insurance policies.[1] As such, the usual rules of construction applicable to insurance contracts generally will apply.[2] Thus, the terms of the policy will be strictly construed against the insurer in favor of the insured.[3] Nevertheless, plain and unambiguous terms will be given their clear, ordinary and simple meaning.[4]

This case turns on the interpretation and meaning of section 6 of the bond. The basic agreement set forth at the outset is to "indemnify and hold harmless

---

[1] 9 Insurance Law and Practice, Appleman, §§5713, 5714.

[2] 9 Appleman, §5273.

[3] Lewis et ux., Fidelity & Casualty Co., 304 Pa. 503, (1931); Evans v. Baltimore Life Insurance Co., 216 Pa. Superior Ct. 394 (1956); Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 394 (1956).

[4] Blue Ridge Textile Co., Inc. v. Travelers Indemnity Company, 27 Pa. D. & C. 2d 55 (1961), affirmed 407 Pa. 463 (1962).

BOOKER BROTHERS, INC., Wilkes-Barre, Pennsylvania, hereinafter referred to as Insured, to an amount not exceeding Fifty Thousand and no/100 Dollars ($50,000.00), from and against the direct loss of any Property, as defined in this bond, sustained by the Insured subsequent to noon of the date hereof and while this bond is in force . . ."

The first language directly related to the fidelity of employe provides:

## "FIDELITY

"(A) Through any dishonest act of any of the Employees committed anywhere and whether committed alone or in collusion with others."

Without the limitations provided by section 6 of the bond, a reasonable interpretation would allow for recovery for losses caused by any employe to the policy limit of $50,000 each. Further, as plaintiff contends, section 6 is a saving clause for the benefit of the insured, and is set forth below:

## "NON-REDUCTION OF LIABILITY

"Section 6. Payment of loss under this bond shall not reduce the liability of the Underwriter under this bond for other losses whenever sustained."

Nonetheless, it is also a limiting clause. Continuing further, section 6 limits the basic agreement,

"PROVIDED, however, that the total liability of the Underwriter under this bond *on account of* *(a) any loss or losses caused by any one act of burglary, robbery or hold-up, or attempt thereat, in which no Employee is concerned or implicated, or (b) any loss or losses with respect to any one unintentional or negli-

---

* Italics provided for emphasis.

gent act or omission on the part of any person (whether one of the Employees or not) resulting in damage to or destruction of Property, or (c) *any loss or losses other than those specified in.(a) and (b) preceding, caused by acts or omissions of any person (whether one of the Employees or not) or acts or omissions in which such person is concerned or implicated,\** or (d) any loss or losses with respect to any one casualty or event, is limited to the sum above stated in the opening paragraph of this bond, irrespective of the total amount of such loss or losses."

In Securities and Exchange Commission v. Arkansas Loan & Thrift Corporation, 297 F. Supp. 73 (U.S.D.C. Ark., 1969), affirmed 427 F. 2d 1171 (C.A. 8, 1970), the court noted that a Broker's Blanket Bond containing substantially the same provisions in dispute here, has long been used but infrequently litigated. Though the liability of the insurer was not in issue there, as it is here, the court went on to construe section 6 of the bond saying that subsection (d), (subsection (c) in this instance), of section 6 ". . . clearly provides that, regardless of the number and amount of losses in which any one person participates, either as the sole actor or in collusion with others, the maximum liability of the insurer for the aggregate of those losses is $150,000" which was the policy limit.

While a bond may be found to have been drawn to provide broader coverage than customary,[5] a bond may not be construed to afford protection against losses which were clearly not within the contemplation of the parties. as revealed by the terms of the bond.[6]

---

[5] Brownsville Lodge No. 357, K. P. v. Great American Indemnity Co., 128 Pa. Superior Ct. 553 (1937).

[6] Wells Corp. v. Aetna Casualty & Surety Co., 98 Pa. Superior Ct. 583 (1929).

As to the subsidiary issue of interest to be allowed to plaintiff, generally, a liquidated claim carries interest from the time the duty to pay arises.[7] When no time has been fixed for the payment of an obligation, interest is recoverable from the date of demand.[8] However, when a contract calls for payment of the principal on the happening of a designated event and is silent as to the interest, ordinarily interest runs from the occurrence of the event.[9] Thus, an insurer may be required to pay interest from the date of loss.[10] Here, discovery of the loss and notification were essentially contemporaneous. A tender[11] will normally stop the running of interest,[12] however, a tender must be unconditional. A demand for a receipt or discharge of the debt renders the tender invalid.[13] Nonetheless, a tender is not necessarily invalidated because of a condition upon which a party has the right to insist and to which the other party cannot reasonably object.[14] In this case, plaintiff has done all the law requires, and all that remains to be done is payment by defendant. Assuming defendant's tender were good, a tender to be kept up must be actually paid into court before de-

---

[7] Carbondale City School District v. Fidelity & Deposit Company of Maryland, 346 Pa. 491 (1943).

[8] Ayoob v. William Penn Trust Company, 132 Pa. Superior Ct. 496 (1938).

[9] Estate of Catherine O'Brien, Deceased, 103 Pa. Superior Ct. 160 (1931).

[10] Jones v. Protection Mutual Fire Insurance Co. of Cambria County, 93 F. Supp. 505, motions denied 95 F. Supp. 589, affirmed 192 F. 2d 1018 (1950); Erie Trust Company v. Employers' Liability Assurance Corporation of London, Limited, 322 Pa. 132 (1936).

[11] 12 PS § 1071.

[12] Hughes v. Antill, 23 Pa. Superior Ct. 290 (1903); cited with approval Commonwealth v. O'Toole, 159 Pa. Superior Ct. 592, 600 (1946).

[13] 37 P. L. E., Tender, §§ 1, 5.

[14] Nickols v. Jones, 166 Pa. 599 (1895).

fendant is relieved from liability for costs incurred and interest accrued thereafter.[15] This, defendant has not done. Though this court does not agree with plaintiff's position, here there is a bona fide dispute, and defendant's contention that plaintiff's action is vexatious has no merit. Defendant has unreasonably and unlawfully withheld payment of money due plaintiff and the plainest and simplest considerations of justice and fair dealing require that plaintiff be compensated for defendant's use of its money since 1962.[16]

## CONCLUSIONS OF LAW

1. This court has jurisdiction over: (a) plaintiff, Booker Brothers, Inc., a Pennsylvania corporation duly licensed to act as a stock broker within the Commonwealth of Pennsylvania, and its principal place of business is at Miners National Bank Building, Wilkes-Barre, Pa.; (b) defendant, American Casualty Company of Reading, Pa., a corporation organized under the laws of the Commonwealth of Pennsylvania, authorized to engage in the business of insurance and suretyship with an office and place of business at 1272 Public Ledger Building, Philadelphia, Pa.

2. Defendant's obligation to plaintiff for the loss which plaintiff sustained is limited to $50,000 by the provisions of the Broker's Blanket Bond.

3. Plaintiff is entitled to $50,000 for all losses sustained as a result of the dishonest acts of John H. Carr and Ann P. Gallagher with which both were concerned and in which both were implicated.

---

[15] 12 PS §§1072, 1073; Lower Yoder Township School District v. Title Trust & Guarantee Co., 318 Pa. 243 (1935).

[16] Peyton v. Margiotti, 398 Pa. 87 (1959); Barium Steel Corporation v. Wiley, 379 Pa. 38 (1954); Lackawanna Iron & Steel Co. v. Lackawanna & Wyoming Valley R. R., 299 Pa. 503 (1930).

4. Plaintiff is entitled to interest from January 3, 1962,[17] with respect to its recovery of $50,000.

## DECISION PURSUANT TO RULE 1038

If no exceptions are filed to this decision within 20 days, this decision shall become the final judgment of this court.

---

[17] The parties have stipulated that the dishonest acts occurred during the period June 17, 1957, until on or about December 30, 1961, and proof of loss was filed within a reasonable time. Notification was made by letter on or about January 3, 1962. (This letter was erroneously dated January 3, 1961).