## Commonwealth v. Serucsak

*Richard A. Lewis, Assistant District Attorney,* for Commonwealth.
*Richard L. Guida,* for defendant.

DOWLING, *J.*, April 5, 1979—Anthony Serucsak rode through a stop sign taking his passenger, John Snyder, into the next world. He was convicted of homicide by vehicle[1] and raises some six issues in

---

1. 75 Pa.C.S.A. §3732.

his journey for post-trial relief.[2] We need only gear up for the first three: The propriety of refusing to direct a verdict, the desirability of a new trial and the appropriateness of the court's charge on culpability. To arrive at a logical conclusion the order of resolvement must be reversed.

Homicide by vehicle is a new model of the old involuntary manslaughter as applied to automobile accidents. It is defined in the Vehicle Code of June 17, 1976, sec. 1, P.L. 162, effective July 1, 1977, sec. 1, 75 Pa.C.S.A. §3732, as follows:

"Any person who unintentionally causes the

---

2. (1.) Is defendant entitled to dismissal of the charges against him because of the Commonwealth's failure to prove him guilty beyond a reasonable doubt?

(2.) Is defendant entitled to a new trial for failure of the Commonwealth to prove him guilty beyond a reasonable doubt?

(3.) Was the court's definition of the culpability requirement in the instant case improper, therefore mandating a new trial?

(4.) Is the statute under which defendant was convicted unconstitutional because:

A. It is vague and therefore violates the Fourteenth Amendment to the United States Constitution, or

B. It violates the equal protection clause of the Fourteenth Amendment to the United States Constitution, or

C. It imposes a cruel and unusual punishment and therefore violates the Eighth Amendment to the United States Constitution?

(5.) Is defendant entitled to a new trial because of the Commonwealth's failure to prove the cause of death of the victim, John Snyder?

(6.) Is defendant entitled to a new trial because the Commonwealth elicited information during trial which informed the jury that defendant was driving a vehicle which did not have a valid inspection sticker?

death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death."

On its face it appears to say that if you violate any provision of the Vehicle Code and as a result death occurs you are ipso facto guilty.[3] This would appear to be quite a departure—one as different as the electric from the gas engine. A cursory examination creates an impression that the statute is designed to prescribe unintentional conduct which causes the death of another person, but a more careful perusal indicated that the word "unintentional" refers to the defendant's desire to cause the death. This leaves us with the question concerning what degree of culpability is necessary in judging defendant's conduct with regard to violation of the traffic rule or regulation itself. In this respect the Vehicle Code is silent and we must therefore look elsewhere.

The Pennsylvania Crimes Code of December 6, 1972, P.L. 1482, as amended, addresses this problem in 18 C.P.S.A. §107(a), which states: "General Rule—"The provisions of Part I of this title (relating to preliminary provisions) are applicable to offenses defined by this title *or by any other statute.*" (Emphasis supplied.) It seems to be the intent of the legislature to make the preliminary provisions of the Crimes Code applicable to all statutes which

---

3. We do not go in this extreme direction. If we did the Constitutional issues raised in defendant's post-trial motions would be very troublesome.

attempt to define and punish criminal conduct.[4] This, then, drives us into chapter 3 of the preliminary provisions, "Culpability." Two pertinent sections provide:

"*Section 302.* General Requirements of culpability—(a) Minimum requirements of culpability.—Except as provided in section 305 of this title (relating to limitations on scope of culpability requirements), a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense.

(b) Kinds of culpability defined.—

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

---

4. Interestingly enough, however, in the comments of the Joint State Commission (1967) they appear to exclude what they term other distinct areas of the law, such as the Vehicle Code and the Liquor Code.

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

(4) A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

(c) Culpability required unless otherwise provided.—When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto.

(d) Prescribed culpability requirement applies to all material elements.—When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all material elements of the offense, unless a contrary purpose plainly appears.

(e) Substitutes for negligence, recklessness and knowledge.—When the law provides that negligence suffices to establish an element of an offense,

such element also is established if a person acts intentionally or knowingly. When acting knowingly suffices to establish an element, such element also is established if a person acts intentionally.

(f) Requirements of intent satisfied if intent is conditional.—When a particular intent is an element of an offense, the element is established although such intent is conditional, unless the condition negatives the harm or evil sought to be prevented by the law defining the offense.

(g) Requirements of willfulness satisfied by acting knowingly.—A requirement that an offense be committed willfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements appears.

(h) Culpability as to illegality of conduct.— Neither knowledge nor recklessness or negligence as to whether conduct constitutes an offense or as to the existance, meaning or application of the law determining the elements of an offense is an element of such offense, unless the definition of the offense or this title so provides." (18 C.P.S.A. §302.)

"*Section 305.* Limitations on scope of culpability requirements.

(a) When culpability requirements are inapplicable to summary offenses and to offenses defined by other statutes. —The requirements of culpability prescribed by section 301 of this title (relating to requirements of voluntary act) and section 302 of this title (relating to general requirements of culpability) do not apply to:

(1) summary offenses, unless the requirement involved is included in the definition of the offense or the court determines that its application is consistent with effective enforcement of the law defining the offense; or

(2) offenses defined by statutes other than this title, in so far as a legislative purpose to impose absolute liability for such offenses or with respect to any material elements thereof plainly appears.

(b) Effect of absolute liability in reducing grade of offense to summary offense. —Notwithstanding any other provisions of existing law and unless a subsequent statute otherwise provides:

(1) when absolute liability is imposed with respect to any material element of an offense defined by a statute other than this title and a conviction is based upon such liability, the offense constitutes a summary offense; and

(2) although absolute liability is imposed by law with respect to one or more of the material elements of an offense defined by a statute other than this title, the culpable commission of the offense may be charged and proved, in which event negligence with respect to such elements constitutes sufficient culpability and the classification of the offense and the sentence that may be imposed therefor upon conviction are determined by section 106 of this title (relating to classes of offenses) and Chapter II of this title (relating to authorized disposition of offenders)." (18 C.P.S.A. §305)

These sections appear as bewildering as the perplexity of entrances, exits, lanes, ramps and signs of some of our modern freeways and interchanges.[5] After running through this maze a number of times two approaches suggest themselves as leading toward some destination.

Do we follow section 302 which lists the require-

---

5. For example, close to home we have the Eisenhower Interchange which in its confusion compares favorably with any in the Los Angeles area.

ments of culpability but excludes absolute liability and other matters discussed in section 305? If section 302 applies, then there is a further problem of the kinds of culpability involved: intentionally, knowingly, recklessly or negligently. One might think that all four did but under section 302(c) it appears that if the statute involved does not describe the culpability element then it is established if the person acts intentionally, knowingly or recklessly, thus excluding negligence. Since homicide by vehicle does not mention any culpability, it can be argued that you must act either intentionally, knowingly or recklessly.

If section 305 applies, we have first the puzzling situation which seems to indicate that where absolute liability is imposed, the offense can only be a summary one: section 305(b)(1). Then the section provides in (b)(2) that even though absolute liability is imposed "the culpability commission of the offense may be charged and proved, in which event negligence with respect to such elements constitutes sufficient culpability. . . ." This seemingly throws you back into section 302(b)(4) which defines negligence as a "gross deviation from the standard of care."

One must eventually get off the runabout and we choose to exit at the ramp of negligence, defined as a gross deviation from the standard of care, and we so charged the jury. This, it may be argued, is not all that different from the old element of involuntary manslaughter[6]—just as the new cars are not often all that different from last year's models.

---

6. Although there has always been a question as to the distinction, if any, between recklessness, gross negligence and gross deviation from the standard of care.

On this frame, therefore, we can examine the remaining issues. First, we must flesh out the factual background. On June 4, 1978, at approximately 9:00 o'clock p.m. defendant was driving a 1969 Chrysler, which he had purchased approximately one-half hour before, on Million Dollar Road approaching the intersection of Route 147 in Halifax, Dauphin County. He had three friends with him, including one John Snyder, who, unbeknownst to all, was taking his last ride. He approached the intersection, controlled by a stop sign on Million Dollar Road, and according to all the testimony, did not stop but went out onto Route 147 where he was struck broadside by a southbound truck. Its driver testified that the car driven by defendant came straight out in front of him and was traveling approximately 45 miles per hour. An off-duty Pennsylvania state trooper was traveling north on Route 147 and testified that he saw the tractor trailer approaching and saw defendant come right out onto the highway directly in front of it.

Defendant, who lives within a few hundred yards of the intersection, said that he had purchased the vehicle for parts and decided to take it out for a test drive. He said that he drove for a few miles, encountered several signs at which he stopped with no problem, and was traveling west on the Million Dollar Road 40 to 45 miles per hour. He said that when he was about 150 feet from the intersection he attempted to brake for the stop sign but nothing happened and he yelled "no brakes." He knew when he was 50 feet from the intersection that he was not going to be able to stop and at that speed he could not turn his vehicle so he had to go straight across the road.

There was also testimony from a passenger in defendant's car who stated that he heard defendant yell that the brakes had failed, looked over the front seat immediately prior to the impact and observed defendant attempting to apply the brakes with no result.

Photographs and diagrams were introduced which show that defendant left skid marks on Million Dollar Road for approximately 55 feet which ended some 15 to 20 feet east of the intersection. The Commonwealth's investigation officer conceded that the skid marks left by defendant's vehicle were consistent with brake failure. He admitted that defendant, at the scene, told him that his brakes had failed but said he checked the brake pedal and it offered resistance.

The vehicle was taken to a garage and the next day it was found that the master cylinder was full of brake fluid. The examining mechanic was exhaustively and masterfully cross-examined by defense counsel and admitted that a connecting hose was broken and that if this had occurred prior to the accident it would cause difficulty in bringing the vehicle to a halt.

After this testimony was presented, the lawyers argued, the court charged and the jury found defendant guilty. Defense counsel vigorously contends that the court should have directed a verdict of acquittal because the Commonwealth failed to establish defendant's guilt beyond a reasonable doubt. For this examination we put on a special lens for we must look at the testimony in a light most favorable to the Commonwealth by accepting as verity the prosecution's evidence, resolving all issues of credibility in its favor and drawing all reasonable inferences which support its position:

Com. v. Burton, 450 Pa. 532, 301 A. 2d 599 (1973); Com. v. Stukes, 435 Pa. 535, 257 A. 2d 828 (1969). Such a view discloses a defendant either ignoring the stop sign or traveling at such a rate of speed that he was unable to bring his vehicle to a stop, buttressed by the testimony that his explanation of brake failure was to some extent refuted by the Commonwealth's witnesses. This we think is sufficient to allow a jury decision.

Defense makes much of the trial court's comments wherein he opined that, were he the factfinder, he would have a reasonable doubt and would acquit. But the judge was on the bench, not in the box, and his opinion on this point cannot be substituted for that of the jury's. This is not to say we are powerless for we have the right, in fact the duty, where the circumstances warrant it, to turn a jury verdict aside if we are convinced that its decision was against the weight of the evidence: Com. v. Hayes, 205 Pa. Superior Ct. 338, 209 A. 2d 38 (1965); Com. v. Harbaugh, 197 Pa. Superior Ct. 587, 179 A. 2d 656 (1962). As our Supreme Court has recently commented: "the grant of a new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial court." Com. v. Zapata, 447 Pa. 322, 327, 290 A. 2d 114 (1972).

We feel this rather extraordinary relief (in criminal cases) is warranted for the following reasons:

1. The sole relevant violation established by the Commonwealth was defendant's failure to yield the right of way in entering a through highway without halting for a stop sign.

2. Defendant lived within a tenth of a mile of the intersection along Route 147 and was quite famil-

iar with the fact that it was a heavily traveled through highway and that Million Dollar Road was controlled by a stop sign.

3. All the witnesses agreed that defendant came right out on the highway and proceeded straight across without any effort to turn to his right or his left. There was no evidence that he had initially stopped at the stop sign or even slowed down and then pulled out.

4. The skid marks left by defendant's vehicle which stopped some distance before he entered the through highway were according to the Commonwealth's own evidence consistent with his explanation of brake failure.

5. The evidence, as to the condition of his brakes following the accident, was at best inconclusive.

In short we have a situation where, absent defendant's explanation of brake failure, we have a young man with three of his friends in the car driving blindly across a known heavily traveled through highway. There was no suggestion whatsoever that his driving was in any way influenced by alcohol or drugs and we certainly cannot presume that he intended to commit suicide. To accept the jury's version we would have to conclude that at best he was playing Russian roulette. In Halifax we find this hard to accept. We think he should have one more ride down the avenues of justice.

Accordingly, we enter the following

## ORDER

And now, April 5, 1979, defendant's motion for a new trial is granted.